# Third District Court of Appeal

## State of Florida

Opinion filed February 15, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-2167
Lower Tribunal No. 14-24237
_____

**Miami-Dade County,**
Appellant,

vs.

**Noel Pozos,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, William L. Thomas, Judge.

Abigail Price-Williams, Miami-Dade County Attorney, and Eric K. Gressman, Assistant County Attorney, for appellant.

Beckham & Beckham, P.A., and Robert J. Beckham, Jr., and Pamela Beckham, for appellee.

Before SUAREZ, C.J., and ROTHENBERG and EMAS, JJ.

EMAS, J.

## INTRODUCTION

Noel Pozos, the defendant below and the appellee here, filed a negligent security action against Miami-Dade County, seeking damages for injuries he sustained as a result of being shot by an unidentified assailant while attending a party at Benito Juarez Park in Miami. The one-count complaint alleged, inter alia, that Miami-Dade County owned and operated the park; that Pozos was an invitee on the premises when he was shot; that the County owed a duty to provide reasonable security; and that the County breached that duty, resulting in injury and damages.

The County filed a motion for summary judgment, asserting that sovereign immunity barred Pozos' action. After conducting an evidentiary hearing, the trial court entered an unelaborated order which stated merely that "the motion for summary judgment is denied." The County has appealed this order. Because the trial court did not determine that, as a matter of law, the County was not entitled to sovereign immunity or immunity under section 768.28(9), Florida Statutes, the County was not authorized to appeal the trial court's order, and we therefore dismiss this appeal as one taken from a nonfinal, nonappealable order.

## ANALYSIS

As a general rule, a party may not seek interlocutory review by appeal of a nonfinal order, including an order denying a motion for summary judgment. See,

2

e.g., Mandico v. Taos Const., Inc., 605 So. 2d 850, 851 n. 2 (Fla. 1992); State, Dep't of Envtl. Prot. v. Garcia, 99 So. 3d 539 (Fla. 3d DCA 2011); Castillo v. Deutsche Bank Nat. Trust Co., 57 So. 3d 965 (Fla. 3d DCA 2011); Taggart v. Morgan, 943 So. 2d 250 (Fla. 3d DCA 2006). However, Article V, section 4(b) of the Florida Constitution authorizes district courts of appeal to review interlocutory orders of the circuit court "to the extent provided by rules adopted by the supreme court." The Florida Supreme Court has by rule authorized interlocutory appeals from a limited and narrowly-defined class of nonfinal orders. Interlocutory appeals of nonfinal orders in civil cases are restricted to those enumerated in Florida Rule of Appellate Procedure 9.130(a)(3). Keck v. Eminisor, 104 So. 3d 359 (Fla. 2012).[1]

Rule 9.130(a)(3)(C) provides:

(3) Appeals to the district courts of appeal of non-final orders are limited to those that

. . .

(C) determine

(i) the jurisdiction of the person;

(ii) the right to immediate possession of property, including but not limited to orders that grant, modify, dissolve or refuse to grant, modify, or dissolve writs of replevin, garnishment, or attachment;

---

[1] We note parenthetically that a party may seek certiorari review of a nonfinal order not otherwise appealable under rule 9.130(a)(3). See Fla. R. App. P. 9.100(a); 9.130(a)(1).

(iii) in family law matters:

a. the right to immediate monetary relief;

b. the rights or obligations of a party regarding child custody or time-sharing under a parenting plan; or

c. that a marital agreement is invalid in its entirety;

(iv) the entitlement of a party to arbitration, or to an appraisal under an insurance policy;

(v) that, as a matter of law, a party is not entitled to workers' compensation immunity;

(vi) whether to certify a class;

(vii) that, as a matter of law, a party is not entitled to absolute or qualified immunity in a civil rights claim arising under federal law;

(viii) that a governmental entity has taken action that has inordinately burdened real property within the meaning of section 70.001(6)(a), Florida Statutes;

(ix) the issue of forum non conveniens;

(x) that, as a matter of law, a party is not entitled to immunity under section 768.28(9), Florida Statutes; or

(xi) that, as a matter of law, a party is not entitled to sovereign immunity.

(Emphasis added).

This rule, and its limited categories of orders subject to interlocutory review, must be narrowly construed. Walker v. Fla. Gas Transmission Co., LLC, 134 So. 3d 571 (Fla. 1st DCA 2014). In Travelers Insurance Co. v. Bruns, 443 So. 2d 959,

4

961 (Fla. 1984), the Florida Supreme Court discussed the underlying purpose for the then-recent amendment to rule 9.130:

> The thrust of rule 9.130 is to restrict the number of appealable nonfinal orders. The theory underlying the more restrictive rule is that appellate review of nonfinal judgments serves to waste court resources and needlessly delays final judgment.

And as the First District recognized in <u>Walker</u>, 134 So. 3d at 572:

> Our supreme court has "carefully created" each category of non-final order subject to interlocutory review after input and weighing various policy considerations, "such as increased appellate workload and concomitant delay in ... resolution." <u>Citizens Prop. Ins. Corp. v. San Perdido Ass'n, Inc.</u>, 104 So.3d 344, 348 (Fla.2012). Accordingly, the categories of non-final orders subject to interlocutory appeal are narrowly construed. <u>Travelers Ins. Co. v. Bruns</u>, 443 So.2d 959, 961 (Fla.1984) ("The thrust of rule 9.130 is to restrict the number of appealable nonfinal orders.")

The relevant subdivision of rule 9.130 authorizes an appeal from a nonfinal order which determines that a party, as a matter of law, is not entitled to sovereign immunity, or is not entitled to immunity under section 768.28(9). Fla. R. App. P. 9.130(a)(3)(C)(x), (xi).

The trial court in this case did not declare, make a finding, or otherwise determine that, as a matter of law, the County was not entitled to sovereign immunity or immunity under section 768.28(9). In fact, and as the dissent acknowledges, the trial court did not make any findings <u>at all</u>. The trial court's order merely "denied" the motion for summary judgment, and contained no explanation, findings of fact, or conclusions of law. Construing the rule narrowly

5

and applying the relevant case law, we are compelled to conclude that this court is without jurisdiction to review this nonfinal order.

Some history is necessary for proper context. In 2012, the Florida Supreme Court addressed the following certified question of great public importance:

> Should review of the denial of a motion for summary judgment based on a claim of individual immunity under section 768.28(9)(a), Florida Statutes, await the entry of a final judgment in the trial court to the extent that the order turns on an issue of law?

Keck, 104 So. 3d at 360-61.

The Court answered the question in the negative, and requested that the Florida Bar Appellate Court Rules Committee "submit a proposed narrow amendment to rule 9.130 addressing the rule change mandated by this decision." Id. at 366. In compliance with the Court's request, the Appellate Court Rules Committee submitted a proposed amendment to rule 9.130(a)(3), which was adopted by the Florida Supreme Court in 2014. In re Amendments to Florida Rule of Appellate Procedure 9.130, 151 So. 3d 1217 (Fla. 2014). The amendment authorized appeals from nonfinal orders which determine that a party, as a matter of law, is not entitled to immunity under section 768.28(9), or is not entitled to sovereign immunity. Fla. R. App. P. 9.130(a)(3)(C)(x), (xi).

Given the recency of these amendments, there is virtually no case law construing or applying these provisions.[2] However, there is relevant case law

construing *identical* language from an existing provision of rule 9.130, authorizing an appeal from a nonfinal order "that determines. . . that, as a matter of law, a party is not entitled to workers' compensation immunity." Fla. R. App. P. 9.130(a)(3)(C)(v). Case law interpreting this provision holds uniformly that an order denying summary judgment on the basis of workers' compensation immunity is not appealable under rule 9.130 unless the trial court's order <u>expressly</u> provides that it is making a determination that, as a matter of law, the party is not entitled to immunity.

---

[2] The only reported cases construing these newly-adopted amendments are <u>Citizens Property Insurance Corp. v. Sosa</u>, 41 Fla. L. Weekly D2660 (Fla. 3d DCA Nov. 30, 2016) and <u>Taival v. Barrett</u>, 204 So. 3d 486 (Fla. 5th DCA 2016), both released after oral argument was held in the instant case.

In <u>Sosa</u>, another panel of our court rejected the argument that the order under review was appealable as a nonfinal order that determined Citizens was not entitled to sovereign immunity: "Here, the trial court's order fails to state that, as a matter of law, sovereign immunity is not available to Citizens. As such, the trial court's order is not appealable pursuant to Rule 9.130(a)(3)(C)(xi)." <u>Sosa</u>, 41 Fla. L. Weekly D2600.

In <u>Taival</u>, the defendant filed a motion for summary judgment, asserting that she was sovereignly immune from suit under section 768.28(9). The trial court entered an order that simply denied the motion. The Fifth District dismissed the appeal for lack of jurisdiction, holding: "As we have previously explained, an order that simply denies the defendant's motion for summary judgment, but does not determine, as a matter of law, that summary judgment is improper, is not appealable." <u>Taival</u>, 204 So. 3d at 487 (citations omitted).

For example, in <u>Hastings v. Demming</u>, 694 So. 2d 718 (Fla. 1997), the Florida Supreme Court set forth what was required to render such a nonfinal order appealable:

> Nonfinal orders denying summary judgment on a claim of workers' compensation immunity are not appealable **<u>unless the trial court order specifically states that, as a matter of law, such a defense is not available to a party.</u>**

<u>Id.</u> at 720 (emphasis added).

The Supreme Court noted that a prior version of this rule[3] was susceptible to differing interpretations, resulting in conflicting decisions among the district courts. In 1996, the rule was amended (to its present language) to settle the conflict among the district courts, eliminate confusion in application of the rule, and restore the narrow scope of the rule. As the Supreme Court would later explain in <u>Reeves v. Fleetwood Homes of Florida, Inc.</u>, 889 So. 2d 812 (Fla. 2004):

---

[3] The pre-1996 version of rule 9.130(a)(3)(C)(v)(which at the time was numbered as (vi)) provided:

> (3) Review of non-final orders of lower tribunals is limited to those that
> ....
> (C) determine
> ....
> (vi) that a party is not entitled to workers' compensation immunity as a matter of law.

8

The original version of the amendment [to rule 9.130(a)(3)(C)(vi)] read: "Review of non-final orders of lower tribunals is limited to those which . . . determine . . . that a party is not entitled to workers' compensation immunity as a matter of law." In 1996, the section was amended by moving the phrase "as a matter of law" from the end of the provision to the beginning. As explained in the committee notes, this amendment was made to clarify "that this subdivision was not intended to grant a right of nonfinal review if the lower tribunal denies a motion for summary judgment based on the existence of a material fact dispute." Fla. R. App. P. 9.130 (Committee Notes, 1996 Amendment). The amendment occurred due to a number of decisions from the district courts of appeal that had broadly interpreted the rule and had allowed review of nonfinal orders denying summary judgment when the denial was the result of the existence of disputed facts.

Id. at 819 (internal citations and footnote omitted).

In Reeves, the Florida Supreme Court reaffirmed its holding in Hastings, requiring that there be a "determination, on the face of the order" that the defendant, as a matter of law, is precluded from asserting workers' compensation immunity. Id. at 821.

The Florida Supreme Court's holding in Hastings—that nonfinal orders denying summary judgment on a claim of workers' compensation immunity are not appealable unless the trial court order specifically states that, as a matter of law, such a defense is not available to a party—has been faithfully followed by all the district courts, including this court. See, e.g., Reeves, 889 at So. 2d at 821 (observing that "[t]he lower courts of Florida have strictly adhered to this Court's decisions in Hastings and [Florida Department of Corrections v.] Culver, [716 So.

9

2d 768 (Fla. 1998)] determining that a district court does not have jurisdiction to review a nonfinal order denying summary final judgment unless the trial court's order explicitly states that the defendant will not be entitled to present a worker's compensation immunity defense at trial"); Amcon Builders, Inc. v. Pardo, 120 So. 3d 1254 (Fla. 3d DCA 2013); Coastal Bldg. Maint., Inc. v. Priegues, 22 So. 3d 148 (Fla. 3d DCA 2009); Southern Pan Servs. Co. v. Rodriguez, 771 So. 2d 612 (Fla. 3d DCA 2000); Peoplease Corp. v. Schroeder, 57 So. 3d 910 (Fla. 1st DCA 2011); Footstar Corp. v. Doe, 932 So. 2d 1272 (Fla. 2d DCA 2006); Rinker Materials Corp. v. Holmes, 697 So. 2d 558 (Fla. 4th DCA 1997).

All of this background is pertinent because the Florida Supreme Court, in adding subdivisions (x) and (xi) to the list of appealable nonfinal orders, adopted the identical language it approved in its 1996 amendment to nonfinal orders regarding entitlement to workers' compensation immunity (subdivision (v)). The Florida Supreme Court's adoption of this identical language cannot be regarded as accidental. When the Supreme Court added subdivisions (x) and (xi) to the list of nonappealable orders, it was obviously aware of the language it had previously utilized in authorizing appeals from workers' compensation immunity orders. The only logical conclusion is that, by using the identical language of the existing rule, and knowing how that language had been construed by Florida courts, the Florida Supreme Court intended that these two new provisions would be construed and

10

applied in like fashion. See Charter Sch. USA, Inc. v. John Doe No. 93, 152 So. 3d 657, 659 n. 2 (Fla. 3d DCA 2014) (recognizing that court rules are construed using the same principles of construction that apply to statutes). See also Dickinson v. Davis, 224 So. 2d 262 (Fla. 1969) (holding that the Legislature is presumed to know the existing law when a statute is enacted, and in reenacting a statute, the Legislature is presumed to be aware of constructions placed upon it by the court); Fla. Dep't of Children & Families v. F.L., 880 So. 2d 602, 609 (Fla. 2004)(holding that "[t]he Legislature is presumed to know the judicial constructions of a law when amending that law, and the Legislature is presumed to have adopted prior judicial constructions of a law unless a contrary intention is expressed").

**CONCLUSION**

Applying the decisions of the Florida Supreme Court, and our own court, in construing rule 9.130 in the context of appeals from orders regarding workers' compensation immunity,[4] we conclude that the County is not authorized to appeal,

---

[4] Additional support can be found in cases construing the scope of an appeal from a nonfinal order under rule 9.130(a)(3)(C)(vii), authorizing an appeal from a nonfinal order which "determines . . . that, as a matter of law, a party is not entitled to absolute or qualified immunity in a civil rights claim arising under federal law." Consistent with cases construing the workers' compensation immunity provision, courts have held that the order is appealable only if it expressly determines that, as a matter of law, the party is not entitled to absolute or qualified immunity. See, e.g., Tindel v. Kessler, 772 So. 2d 599 (Fla. 5th DCA 2000); Vermette v. Ludwig, 707 So. 2d 742 (Fla. 2d DCA 1997).

11

and this court is without jurisdiction to review, the trial court's order denying the motion for summary judgment.

The scope of our limited authority under rule 9.130(a)(3)(xi) is to *review* whether the trial court properly "determine[d]. . . that, as a matter of law, a party is not entitled to sovereign immunity." This court does not have the authority to *determine in the first instance* whether, as a matter of law, the County is entitled to sovereign immunity. But that is, in essence, what the dissenting opinion proposes to do, given the complete absence of any indication in the order below that the trial court in fact determined that, as a matter of law, the County was not entitled to sovereign immunity or immunity under section 768.28(9).[5]

It may well be that the trial court denied the motion for summary judgment for reasons distinct from the merits of the immunity question, including the existence of disputed issues of material fact or ongoing discovery that would render summary judgment premature at this juncture. The parties could have, but did not, seek clarification or otherwise request that the trial court expressly state in

---

[5] The dissent opines, at *33: "I recognize that <u>unless it can be determined as a matter of law</u> that either the County had no duty or it is immune from suit, this Court lacks jurisdiction to review the trial court's order. . . ." (Emphasis added.) This statement erroneously implies that either the trial court <u>or</u> this court can make such a determination. However, rule 9.130(a)(3) requires the <u>trial court</u> to make such a determination. This court's duty (and the scope of our authority under the rule) is to review the propriety of the trial court's determination. In the absence of such a determination by the trial court, this court is without jurisdiction to review this nonfinal order, and most certainly without authority to make the determination on our own accord.

12

its order whether it determined that, as a matter of law, the County was not entitled to sovereign immunity or immunity under section 768.28(9). Failing that, we are left in the untenable position of trying to ascertain the trial court's rationale. This, however, is not our role, and we may not presume or infer jurisdiction under these circumstances.

Appeal dismissed as one taken from a nonfinal, nonappealable order.

SUAREZ, C.J., concurs.

ROTHENBERG, J.

Noel Pozos seeks damages for injuries he sustained as a result of being shot by an unidentified assailant while at a teenager's birthday party at Benito Juarez Park ("the Park") in Homestead, Florida. The one-count complaint alleges that Miami-Dade County ("the County") owned, controlled, maintained, and operated the park; Pozos was an invitee on the premises when he was shot; the County assumed the duty to provide reasonable safety to Pozos; and the County breached that duty by failing to provide reasonable safety measures and security personnel to control, patrol, and guard against dangerous activity and/or to warn Pozos and others of the potential danger.

The County filed a motion for summary judgment asserting that: (1) the County did not have a duty to prevent the misconduct of third persons or to enforce the law for the benefit of specific individuals; and (2) sovereign immunity bars this action. After conducting an evidentiary hearing, the trial court denied the County's motion for summary judgment. Because the evidence clearly establishes that sovereign immunity bars this action as a matter of law, the trial court was required to grant the County's motion for summary judgment. I, therefore, respectfully dissent from the majority opinion affirming the trial court's order denying the

14

County's motion for summary judgment.

## JURISDICTION

In Rodriguez v. Miami-Dade County, 117 So. 3d 400, 402 (Fla. 2013), the Florida Supreme Court found that the appellate courts lacked jurisdiction to review, by a petition for writ of certiorari, a trial court's order denying a motion to dismiss on sovereign immunity grounds where the governmental entity claiming the immunity has failed to demonstrate irreparable harm and where there exists material issues in dispute. The Court also reiterated its position that irreparable harm is not shown simply because the governmental entity must continue to litigate the matter despite its claim of immunity. Id. at 405. A majority of the Court, however, requested that the Florida Bar Appellate Court Rules Committee ("the Rules Committee") propose an amendment to Florida Rule of Appellate Procedure 9.130 to expand the list of appealable non-final orders to include denials of any claim of immunity where the question presented is solely a question of law. Id. at 405. In response, the Rules Committee proposed, and the Florida Supreme Court adopted, rule 9.130(a)(3)(c)(xi), which now permits such appeals. We, therefore, have jurisdiction to entertain this appeal, as the question presented is whether the County is immune from suit as a matter of law.

## ANALYSIS

Based on my review of the trial court's comments during the evidentiary

hearing conducted by the trial court, it is necessary to reiterate that when addressing the issue of governmental tort liability under Florida law, the court's "duty analysis is *conceptually distinct* from any later inquiry regarding whether the governmental entity remains sovereignly immune from suit notwithstanding the legislative waiver present in section 768.28, Florida Statutes." Wallace v. Dean, 3 So. 3d 1035, 1044 (Fla. 2009) (footnote omitted). The analysis, therefore, consists of two-prongs. "If no duty of care is owed with respect to alleged negligent conduct, then there is no governmental liability, and the question of whether the sovereign should be immune from suit need not be reached." Pollock v. Fla. Dep't of Highway Patrol, 882 So. 2d 928, 932 (Fla. 2004); see also Breaux v. City of Miami Beach, 899 So. 2d 1059, 1063 (Fla. 2005) (noting that "[i]n cases involving governmental tort liability, we generally determine whether the defendant owes a duty of care to the plaintiff before we address whether the governmental entity is immune from liability"); Clay Elec. Coop., Inc. v. Johnson, 873 So. 2d 1182, 1185 (Fla. 2003) (identifying "duty of care" as the first required element of a negligence claim); Henderson v. Bowden, 737 So. 2d 532, 535 (Fla. 1999) ("A threshold matter is whether the [defendant] had a duty to act with care toward the decedents . . . ."). "[T]he absence of a duty of care between the defendant and the plaintiff results in *a lack of liability, not* application of immunity from suit." Wallace, 3 So. 3d at 1044 (emphasis in original). In other words, the absence of a duty of care

16

renders the defendant nonliable as a matter of law, and the trial court does not need to address whether the governmental entity is sovereignly immune from suit. Wallace, 3 So. 3d at 1045.

However, it is important to remember that the analysis is a two-prong analysis, and thus, even where the plaintiff has established the existence of the governmental entity's duty of care towards the plaintiff, sovereign immunity may still shield the government from legal action and liability. Wallace, 3 So. 3d at 1044; see also Henderson, 737 So. 2d at 535 ("Assuming a duty is owed, we must then determine whether sovereign immunity bars an action for an alleged breach of that duty."); Kaisner v. Kolb, 543 So. 2d 732, 734 (Fla. 1989) ("[C]onceptually, the question of the applicability of . . . immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity.") (quoting Williams v. State, 664 P.2d 137, 139 (1983)).

Unfortunately, the trial court in the instant case did not appreciate the need to perform this two-step analysis, and either focused solely on the duty prong or conflated the two separate prongs of the analysis. See Wallace, 3 So. 3d at 1045 (noting that in Miami-Dade County v. Fente, 949 So. 2d 1101, 1103-05 (Fla. 3d DCA 2007), and in Seguine v. City of Miami, 627 So. 2d 14, 17 (Fla. 3d DCA 1993), this Court conflated the issue of whether the government owed a duty of

17

care to the plaintiff with the separate and distinct issue of whether the doctrine of sovereign immunity shields the government from tort liability); see also City of Belle Glade v. Woodson, 731 So. 2d 797 (Fla. 4th DCA1999) (similarly conflating duty of care with sovereign immunity).   Although the trial court's order reflects a failure to perform this two-prong analysis, the record demonstrates that the County established under the second prong of the analysis that as a matter of law it is sovereignly immune from suit.  I would therefore reverse the trial court's order.

**A. <u>Duty of Care</u>**

Under the two-prong analysis, the County is immune from liability if the County establishes **either** that it owed Pozos no duty of care **or** the County demonstrates that it is sovereignly immune from suit.  I will, therefore, address each prong separately in this dissent.  In <u>Trianon Park Condominium Ass'n v. City of Hialeah</u>, 468 So. 2d 912 (Fla. 1985), the Florida Supreme Court issued a comprehensive opinion addressing the duty of care prong of the analysis, and articulated a "'rough,' general guide concerning the type of activities that either support or fail to support the recognition of a duty of care between a governmental actor and an alleged tort victim."  <u>Wallace</u>, 3 So. 3d at 1047.  To summarize, the <u>Trianon</u> Court made the following findings.

1. First, "for there to be governmental tort liability, there must be either an underlying common law or statutory duty of care with respect to the alleged negligent conduct.   For certain basic judgmental or discretionary governmental functions, there has

18

never been an applicable duty of care." Trianon, 468 So. 2d at 917 (internal citations omitted).

2. Second, "the enactment of the statute waiving sovereign immunity did not establish any new duty of care for governmental entities." Id. Thus, governmental entities have the identical duties of care as private persons do. Id.

3. Third, "there is not now, nor has there ever been any common law duty for either a private person or a governmental entity to enforce the law for the benefit of an individual or a specific group of individuals. In addition, there is no common law duty to prevent the misconduct of third persons." Id. at 918

4. Fourth, "under the constitutional doctrine of separation of powers, the judicial branch must not interfere with the discretionary functions of the legislative or executive branches of government absent a violation of constitutional or statutory rights." Id. at 918. Specifically, the Court held that "[j]udicial intervention through private tort suits into the realm of discretionary decisions relating to basic governmental functions would require the judicial branch to second guess the political and police power decisions of the other branches of government and would violate the separation of powers doctrine." Id. at 918.

5. Lastly, "certain discretionary functions of government are inherent in the act of governing and are immune from suit. It is 'the nature of the conduct, rather than the status of the actor,' that determines whether the function is the type of discretionary function which is, by its nature, immune from tort liability." Id. at 918 (internal citations omitted).

The Florida Supreme Court's finding that "certain discretionary functions of government are inherent in the act of governing and are immune from suit" is, perhaps, the most difficult finding to apply, especially since the demarcation between discretionary and other executive or administrative decisions must be determined on a case-by-case basis. Trianon, 468 So. 2d at 918. Thus, the Court set forth a list of criteria to assist the courts when determining whether the

19

governmental conduct eminates from the discretionary planning or judgment phase of government, which is not subject to tort liability, or during the operational phase of government. If the governmental conduct or decision was operational, tort liability may attach **if** there exists either a common law or statutory duty of care **and** there exists no sovereign immunity for the governmental conduct or decision.

Id.

The four categories regarding governmental functions are as follows:

I. *Legislative, Permitting, Licensing, and Executive Officer Functions.*
Clearly, the legislature, commissions, boards, city councils, and executive officers, by their enactment of, or failure to enact, laws or regulations, or by their issuance of, or refusal to issue, licenses, permits, variances, or directives, are acting pursuant to basic governmental functions performed by the legislative or executive branches of government. The judicial branch has no authority to interfere with the conduct of those functions unless they violate a constitutional or statutory provision. There has never been a common law duty establishing a duty of care with regard to how these various governmental bodies or officials should carry out these functions. These actions are inherent in the act of governing.

II. *Enforcement of Laws and Protection of the Public Safety.*
How a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duly enacted by a governmental body is a matter of governance, for which there never has been a common law duty of care. This discretionary power to enforce compliance with the law, as well as the authority to protect the public safety, is most notably reflected in the discretionary power given to judges, prosecutors, arresting officers, and other law enforcement officials, as well as the discretionary authority given fire protection agencies to suppress fires. This same discretionary power to enforce compliance with the law is given to regulatory officials . . . .

20

The lack of a common law duty for exercising a discretionary police power function must, however, be distinguished from existing common law duties of care applicable to the same officials or employees in the operation of motor vehicles or the handling of firearms during the course of their employment to enforce compliance with the law. In these latter circumstances there always has been a common law duty of care and the waiver of sovereign immunity now allows actions against all governmental entities for violations of those duties of care.

III. *Capital Improvement and Property Control Functions.*

As this Court has made clear in prior cases, there is no liability for the failure of a governmental entity to build, expand, or modernize capital improvements such as buildings and roads. . . . On the other hand, once a governmental entity builds or takes control of property or an improvement, it has the same common law duty as a private person to properly maintain and operate the property.

IV. *Providing Professional, Educational, and General Services.*

Providing professional, educational, and general services for the health and welfare of citizens is distinguishable from the discretionary power to enforce compliance with laws passed under the police power of this state. These service activities, such as medical and educational services, are performed by private persons as well as governmental entities, and common law duties of care clearly exist. Whether there are sufficient doctors provided to a state medical facility may be a discretionary judgmental decision for which the governmental entity would not be subject to tort liability. Malpractice in the rendering of specific medical services, however, would clearly breach existing common law duties and would render the governmental entity liable in tort.

Trianon, 468 So. 2d at 919-921 (italics in original; internal citations omitted).

In Wallace, the Florida Supreme Court explained that the activities listed in Category I pertain to the public at large, and thus they do not support a duty of care towards individual plaintiffs. Id. at 1047. The same is true for activities falling

21

within Category II, unless it can be shown that the governmental actor owed the alleged tort victim a "special duty of care." Id. at 1047-48. On the other hand, Category III and IV activities generally may subject the government to liability. Id. at 1048.

The law as it relates to the duty of care prong when addressing the issue of governmental tort liability may, therefore, be summarized as follows. To establish governmental tort liability, there must be an underlying common law or statutory duty of care; there is no common law duty to enforce the law for the benefit of individuals or groups of individuals or to prevent the misconduct of third person; there is no duty of care for certain basic judgmental or discretionary governmental functions absent a special duty of care owed to the tort victim; and once the governmental entity builds, improves, or takes control of property, it has the same common law duty as a private person to properly maintain and operate the property.

B. **Sovereign Immunity**

As stated earlier, even where a duty is owed, sovereign immunity may bar an action for an alleged breach of that duty, see Pollock 882 So. 2d at 932-33; Henderson, 737 So. 2d at 535; Kaisner, 543 So. 2d at 734, because in Florida, "governmental immunity derives entirely from the doctrine of separation of powers, not from a duty of care or from any statutory basis." Kaisner, 543 So. 2d

at 737.

When addressing the test for determining when a governmental entity enjoys sovereign immunity, the Florida Supreme Court held "that the separation-of-powers provision present in article II, section 3 of the Florida Constitution requires that 'certain [quasi-legislative] policy-making, planning or judgmental governmental functions cannot be the subject of traditional tort liability.'" Wallace, 3 So. 3d at 1053 (quoting Commercial Carrier Corp. v. Indian River Cnty., 371 So. 2d 1010, 1020 (Fla. 1979)). On the other hand, decisions made at the operational level—decisions or actions implementing policy, planning, or judgmental governmental functions—generally do not enjoy sovereign immunity. Commercial Carrier, 371 So. 2d at 1021. "Planning level functions are generally interpreted to be those requiring basic policy decisions, while operational level functions are those that implement policy." Id. (footnote omitted).

While nearly every endeavor involves some level of discretion, it is the governmental quasi-legislative discretion exercised at the policy-making or planning level which is protected from tort liability. Wallace, 3 So. 3d at 1053; Yamuni, 529 So. 2d at 260. Thus, in addition to the five basic principles identified by the Florida Supreme Court in Trianon, which have been listed at the beginning of this analysis, the Court recognized that "there were areas of government activity where orthodox tort liability stops and the act of governing begins, . . . as well as

23

the distinct principle of law . . . which makes not actionable in tort certain judgmental decisions of governmental authorities which are inherent in the act of governing." Trianon, 468 So. 2d at 918 (internal citations and quotation marks omitted). Further, "certain discretionary governmental functions remain immune from tort liability . . . because certain functions of coordinate branches of government may not be subjected to scrutiny by judge or jury as to the wisdom of their performance." Id. (internal citations and quotation marks omitted).

C. **Applying the Law to the Instant Case**

The trial court's order denying the County's motion for summary judgment provides this Court with absolutely no guidance. The order does not contain the basis for the trial court's ruling, perform even a perfunctory analysis, indicate whether there were any material factual issues in dispute or factual issues generally reserved for the trier of fact, or specify which of the prong(s) of the analysis the County failed to establish.

Because the duty of care prong involves resolution of factual issues, which the trial court failed to address, and the record reflects potential disputed material factual issues as to whether the County owed Pozos a legal duty of care, my analysis is focused on the sovereign immunity prong, which if established by the County as a matter of law, required the grant of summary judgment in its favor. That is because even if the trial court were to have found that the County owed

24

Pozos a duty of care or that there were material facts in dispute or facts that needed to be resolved by the jury as to duty, if the County's conduct, actions, or decisions were as a result of its discretionary policy-making or planning function, then it is sovereignly immune from suit as a matter of law.

The record reflects the following. On August 24, 2012, Eli Salgado purchased a Miami-Dade County Park Foundation membership for $149. This membership included a coupon book containing several promotional items, including two tickets to the zoo, a 50% discount coupon for golf, and a coupon for the use of a park shelter without payment of the requisite rental fee. Along with Salgado's membership and the coupon booklet, Salgado was given a copy of the Park's rules and regulations to be followed when renting a facility at the Park. These rules contained a section regarding when permits and off-duty officers are required and provided notice to Salgado that it was his responsibility to obtain the correct permit(s) and to hire off-duty police officers under certain circumstances. For example, these rules provided that when a D.J., live music, or speakers are going to be used, the person renting the facility or hosting the event at the Park must obtain a broadcast permit and hire and pay for off-duty police officers. Depending on the type or size of the party or event, other permits are required, and again, Salgado must hire off-duty police officers to provide security for the event. Specifically, the rules and regulations provided that if Salgado was expecting over

25

a certain number of guests, then he would be required to hire two off-duty police officers and obtain a special events permit. The rules and regulations additionally stated that the Park's employees would not be responsible for providing any of these items.

When Salgado rented a shelter at the Park for his September 22, 2012 birthday party, he simply asked to rent the shelter and used the free rental coupon contained in his membership coupon booklet. He did not advise anyone that he was going to hire a D.J., and he did not obtain any permits or hire any off-duty police officers. Instead, he procured two private security officers to provide security at the party.

The only Park employee present for this after-hours private party was Diogenes Martin, a part-time Park Service Aide, whose responsibilities were to clean the restrooms and the Park before and after an event and to keep the area clean and change the trash bags during the event. Also present was a teenage volunteer who was helping Martin that night. Victor Jenkins, the Goulds South Dade Zone Manager who is responsible for managing seventeen parks for Miami-Dade County Parks and Recreation, testified in his deposition that the County has only budgeted for twenty-seven park security officers to service all of the recreational facilities throughout the County. These officers are directed to mainly patrol the beaches and marinas on the weekends. Because the County does not

26

provide security at these private parties and events, it requires the patron renting a park facility to contact the police department and hire off-duty officers for certain events.

Martin testified in his deposition that he performed his duties as required on the night of the party. He made sure the restrooms and area were clean, the trash was properly disposed of, and the trash bags were changed when the cans became full. He explained that Salgado was celebrating his eighteenth birthday, and the party consisted of mostly sixteen-to-eighteen-year-olds who were eating, dancing, and just having a good time. Salgado's parents were present, and there were also two large men wearing "Security" T-shirts present who appeared to be patrolling the area and providing security for the party. He did not see anyone using drugs, fighting, or having a confrontation with anyone. Everything was calm and everyone seemed to be having a good time when all of a sudden, at around 10:00 or 10:30 p.m., he heard shots fired. As soon as he realized that some of the kids had been shot, he called 911 and then called his supervisor.

Inga Portilla, a Park Manager, confirmed that Park Service Aides are only responsible for maintenance within the Park. They do not provide security, do not check to see if the renter has obtained the required permits, are not trained in crime prevention, and are not authorized to "police" the area. She also confirmed that after Salgado paid his membership fee, a booklet was sent to his house containing

27

the rental coupon and a copy of the Park's rules and regulations. These rules and regulations are also posted at the Park. Portilla explained that "once we rent the facility . . . we don't have anything to do with direct involvement of the parties," and that it was Salgado's responsibility to follow the rules, obtain the necessary permits, and hire off-duty police officers if he was having a party that required off-duty police officers, as "[w]e are not responsible for the party."

Pozos presented no evidence to refute any of the above referenced evidence. The affidavit/statement provided by Salgado, the renter and host of the party, does not refute the testimony of the park employees or the physical evidence. Salgado did not dispute that he had received a copy of the Park's rules and regulations related to rentals of the Park's facilities. He merely states that **when he rented the pavilion** he was not advised that he needed to hire off-duty officers and that he **did not recall** if anyone had asked him how many people he expected would be attending the party.

Therefore, the unrefuted evidence supports the legal conclusion that the County made a discretionary policy/planning decision to allow patrons of its parks to rent its facilities for private parties or events. Relying on its legislative/permitting/licensing authority, the County enacted certain rules and regulations governing the rental and use of its parks and the park's facilities. Based on the County's limited resources, it exercised its discretion to assign only

28

twenty-seven officers to the Parks and Recreation Department to service all of the parks, beaches, and County-owned recreational areas located throughout the county and to direct those officers to primarily patrol the public beaches and marinas on the weekends, rather than directing them to patrol and monitor private parties being held in public parks. The County, therefore, included certain restrictions and requirements within its enacted rules and regulations and rental agreements, which the party or event host was required to follow. Among other things, these rules and regulations required the renter to go to the police department and (1) obtain a broadcast permit if using a D.J., live music, or sound equipment; (2) obtain a special event permit if over 200 guests were expected to attend; and (3) hire off-duty police officers under each of these scenarios. The rules and regulations and the rental agreement specified that the County's park employees would not be responsible for the failure to meet any of these requirements.

When Salgado purchased his Park membership, he was sent a copy of these rules and regulations. Salgado, however, did not abide by these rules and regulations when he used his free coupon to rent a pavilion for his birthday party. Although he had a D.J. and sound equipment at the party, he did not obtain a broadcast permit or hire off-duty police officers from the police department. Whether he was additionally required to obtain a special event permit and hire off-

29

duty police officers based on the number of guests he expected to attend is unclear because the evidence does not reflect whether Salgado expected so many people to attend and whether there were more than 200 guests at the party. This issue is nevertheless irrelevant because, based on Salgado's use of a D.J. and sound equipment, he was required to hire two off-duty police officers anyway. However, instead of obtaining the necessary permit(s) and hiring off-duty police officers, Salgado hired two private-duty security officers.

Whether Salgado's failure to follow the County's rules and regulations was the proximate cause of the shooting during his party is, however, not the issue before us. Setting aside the question of whether the County even had the duty to protect Salgado's invitees against the unlawful conduct of a third party during Salgado's party at the Park, the County was sovereignly immune from tort liability as a matter of law. As stated earlier, that is because if the County demonstrated that **either** it did not owe the plaintiff a duty of care **or** the County's decision, omission, or conduct was as a result of its quasi-legislative discretionary policy or planning decision, the County would be sovereignly immune from tort liability. Wallace, 3 So. 3d at 1044; Henderson, 737 So. 2d at 535; Kaiser, 543 So. 2d at 734; Trianon, 468 So. 2d at 917-21.

Because the County's decisions were quasi-legislative discretionary policy or planning decisions it is sovereignly immune from suit and thus, it was entitled to

30

summary judgment as a matter of law. This conclusion is supported by prior decisions from the Florida Supreme Court, this Court, and our sister courts.

For example, in Delgado v. City of Miami Beach, 518 So. 2d 968 (Fla. 3d DCA 1988), this Court affirmed the trial court's order granting the City of Miami Beach's motion for summary judgment after concluding that the City of Miami Beach was protected from liability under the doctrine of sovereign immunity as a matter of law. Delgado was injured when someone in the crowd ignited fireworks which struck and burned Delgado's leg while he was attending a concert and a fireworks display sponsored by the City of Miami Beach. Delgado claimed that the City of Miami Beach, which had sponsored the event, breached its duty by failing to prohibit the attendees from possessing and detonating their own fireworks. This Court, however, concluded that the City of Miami Beach's "actions fell within the planning-level, discretionary function of government, for which no liability attaches." Id. at 969. Specifically, this Court held that "[t]he manner in which a city, through its police officers, exercises discretionary authority to enforce compliance with the laws and protect the public safety, falls squarely within the city's power to govern. Accordingly, the city is protected under the doctrine of sovereign immunity." Id. (citing Trianon, Commercial Carrier, and other cases).

As in Delgado, the County's actions in the instant case—not assigning

31

officers to patrol or be present at private parties or events held in its public parks, but to, instead, require those who rent its park facilities to obtain permits and hire off-duty officers under certain circumstances—was a discretionary planning and/or policy decision. It was a governmental decision made in the exercise of its discretionary authority regarding the manner in which compliance and enforcement of the law and the protection of the public would be effectuated. How the County notified those who rented its park facilities of their obligations and responsibilities was also a planning/policy discretionary governmental decision. Because parks such as Benito Juarez Park were "un-manned" parks with only part-time maintenance employees in attendance, the County, in the exercise of its discretion, put into place a policy requiring the County to notify each individual who purchased a Park membership or rented a Park facility by providing him/her with a copy of the Park's rules and regulations. The unrefuted evidence in this case is that these rules and regulations were sent to the Salgado's home along with his coupon book after he purchased his Park membership. Because these decisions fell squarely within the County's power to govern, they are protected as a matter of law under the doctrine of sovereign immunity.

The decisions of the County regarding where and how to deploy its available manpower (sworn police officers) is a discretionary or planning function. And, as the Florida Supreme Court stated in Trianon, "under the constitutional doctrine of

separation of powers, the judicial branch must not interfere with the discretionary functions of the legislative or executive branches of government absent a violation of constitutional or statutory rights." Trianon, 468 So. 2d at 918. "While sovereign immunity is a silent issue here, we ought not lose sight of the fact that inherent in the right to exercise police powers is the right to determine strategy and tactics for the deployment of those powers." Wong v. City of Miami, 237 So. 2d 132, 134 (Fla. 1970); see also Commercial Carrier, 371 So. 2d at 1020 (quoting Wong, 237 So. 2d at 134):

> The sovereign authorities ought to be left free to exercise their discretion and choose the tactics deemed appropriate without worry over possible allegations of negligence. Here officials thought it best to withdraw their officers. Who can say whether or not the damage sustained by petitioners would have been more widespread if the officers had stayed . . . .

The majority contends that because the trial court simply denied the County's motion for final summary judgment, this Court lacks jurisdiction to review that ruling. I respectfully disagree.

I recognize that unless it can be determined as a matter of law that either the County had no duty or it is immune from suit, this Court lacks jurisdiction to review the trial court's order denying the County's motion for summary judgment. This Court has jurisdiction in this case because there are no disputed issues of fact as to the immunity prong, and thus the County is immune from suit as a matter of law. The County's decisions as to: how many officers to employ and allocate to

33

patrol the County's recreational facilities; whether to rent its facility for the use of a private party or function; what rules and regulations should be adopted for that purpose; and the responsibilities and duties to be borne by the renter, are all quasi-legislative discretionary policy/planning decisions. Thus, the County is immune from suit, and therefore, was entitled to summary judgment as a matter of law.

The majority contends that, because the trial court's order does not articulate the basis for its ruling, there could have been a number of reasons why the trial court denied the County's motion for summary judgment. For example, the majority posits that there may have been disputed issues of material fact precluding summary judgment. While I agree that the record may support a finding that there are disputed issues of material fact as to the duty prong, there were, however, no disputed issues of material fact as to the immunity prong, and therefore the determination as to whether the County is sovereignly immune from suit is a legal determination, not a factual determination in this case.

The majority opinion also cites to two cases in footnote 2 in support of its position that this Court lacks jurisdiction to review the order denying the County's motion for summary judgment on the basis of sovereign immunity. The first case is Citizens Property Insurance Corp. v. Sosa, 41 Fla. L. Weekly D2660 (Fla. 3d DCA Nov. 30, 2016). Sosa, however, is distinguishable.

First, the order appealed in Sosa was an order denying Citizen's motion to

34

strike or dismiss Counts II and III of the complaint, not from an order denying a motion for summary judgment. Second, this Court specifically noted that the transcript of the hearing on the motion to dismiss revealed that the trial court did not reach or rule on the issue of immunity when it denied Citizen's motion to dismiss. Third, the motion to dismiss was only being denied until a coverage determination was made. Under these circumstances, this Court concluded that the order was not a reviewable non-final order.

In contrast, the issue of sovereign immunity was squarely before the trial court in the instant case; the motion before the trial court was not a motion to dismiss, but rather, was a motion for summary judgment based on sovereign immunity; and the trial court did not simply defer or abate its ruling—it decided the issue based on the factual record before it. The parties in the instant case presented evidence and made arguments relating to both the duty and sovereign immunity prongs of the County's immunity from suit argument. While there were disputed issues of fact regarding the duty prong, there were no disputed issues of fact as to the sovereign immunity prong. And the undisputed facts as to the sovereign immunity prong established that the County is sovereignly immune from suit. Thus, the trial court erred as a matter of law by denying the County's motion for summary judgment, and this Court has jurisdiction to review that order.

The second case cited by the majority in footnote 2 is Taival v. Barrett, 204

So. 3d 486 (Fla. 5th DCA 2016). The one paragraph opinion provides little direction but, based on the parentheticals following the citations in the body and footnotes in the opinion, it appears that, unlike the case before this Court, there were disputed issues of fact.

I also disagree with the majority's interpretation of rule 9.130(a)(3)(C)(xi). In 2012, the Florida Supreme Court was presented with a certified question of great public importance in Keck v. Eminisor, 104 So. 3d 359, 360 (Fla. 2012), which it rephrased as follows:

> Should review of the denial of a motion for summary judgment based on a claim of individual immunity under section 768.28(9)(a), Florida Statutes, await the entry of a final judgment in the trial court **to the extent that the order turns on an issue of law**?

(emphasis added). The Florida Supreme Court answered the certified question in the negative and requested an amendment to rule 9.130 to reflect the rule change "mandated by this decision." Id. at 366. Thereafter, rule 9.130 was amended to add subsections (x) and (xi).

> (3) Appeals to the district courts of appeal of non-final orders are limited to those that
>
> . . . .
>
> (C) determine
>
> . . . .
>
> > (x) that, as a matter of law, a party is not entitled to immunity under section 768.28(9), Florida Statutes; or
> > (xi) that, as a matter of law, a party is not entitled to sovereign immunity.

36

In reaching its decision in <u>Keck</u>, the Florida Supreme Court specifically noted that:

> [I]f a defendant who is entitled to the immunity granted in section 768.28(9)(a) is erroneously named as a party defendant and is required to stand trial, that individual has effectively lost the right bestowed by statute to be protected from even being named as a defendant. If orders denying summary judgment based on claims of individual immunity from being named as a defendant under section 768.28(9)(a) are not subject to interlocutory review, that statutory protection becomes essentially meaningless for the individual defendant.
>     For the above reasons, we answer the rephrased question in the negative and hold that an order denying summary judgment based on a claim of individual immunity under section 768.28(9)(a) **is subject to interlocutory review where the issue turns on a question of law**.

<u>Keck</u>, 104 So. 3d at 366 (emphasis added).

Of particular note is the fact that, although the First District Court of Appeal had not addressed whether Keck was entitled to the immunity provided under section 768.28(9)(a) because it believed it had no authority to review the trial court's order in an interlocutory appeal, the Florida Supreme Court reviewed the record itself and made that determination. <u>Keck</u>, 104 So. 3d at 366-67. Ultimately, the Court concluded that based on the undisputed material facts, Keck was entitled to immunity under section 768.28(9)(a). <u>Id.</u> at 366-67.

As in <u>Keck</u>, I have reviewed the record and the record reflects that based on the undisputed material facts, the County is entitled to immunity as a matter of law. Because the material facts relevant to the sovereign immunity prong of the analysis

37

were undisputed, the determination as to whether the County is sovereignly immune "turns on a question of law" thus subjecting the trial court's denial of the County's motion for summary judgment reviewable on interlocutory appeal. Id. at 366.

## CONCLUSION

The determination of whether a governmental entity is immune from liability involves a two-prong analysis: (1) whether the governmental entity owed the plaintiff a duty of care; and (2) whether sovereign immunity bars the actions based on an alleged breach of that duty. If the governmental entity establishes **either** that it owed no duty to the plaintiff **or** it was entitled to sovereign immunity, it is entitled to summary judgment.

Although the trial court's order merely denies the County's motion for summary judgment, the failure to specify the basis for that denial is not fatal because, even if the County owed the plaintiff a duty of care, or there was a material factual dispute as to the issue of duty (which was not addressed in my analysis), the County is immune from suit as a matter of law because it established the second prong of the analysis—that the County's decisions in this case were discretionary, quasi-legislative, planning, or policy decisions. The trial court therefore erred by denying the County's motion for summary judgment. Accordingly, I would reverse the order on appeal and remand for entry of an order

granting summary judgment in favor of the County.

I believe that the majority has erred by focusing its analysis on the deficiency of the trial court's order. Although the trial court's order merely denies the County's motion for summary judgment without elaboration, by issuing such an order, it is denying the County's claim of sovereign immunity, which, based on the record before it, clearly established the County's immunity from suit. The majority opinion has, however, concluded that because the trial court's order does not specify the grounds for its denial, review of that order is premature and constitutes a non-appealable non-final order. Thus, based on the majority opinion, it appears that the County is not precluded from filing a new appeal after obtaining an order in which the trial court makes actual findings regarding the sovereign immunity prong of the analysis.