IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

BREVARD COUNTY, FLORIDA,

       Appellant,

v.

       Case No.    5D21-1809
       LT Case No. 05-2014-CA-41947

WATERS MARK DEVELOPMENT
ENTERPRISES, LC,

       Appellee.

_____/

Opinion filed September 9, 2022

Nonfinal Appeal from the Circuit Court
for Brevard County,
Curt Jacobus, Judge.

Dale A. Scott and Michael J. Roper, of
Roper, P.A., Orlando, for Appellant.

John H. Pelzer,  Richard A. Epstein,
Jeffrey A. Backman and Roy Taub, of
Greenspoon Marder, LLP, Fort
Lauderdale, and Geoffrey A. Pette, of
Pette, P.A., Fort Lauderdale, for Appellee.

NARDELLA, J.

      This appeal involves a claim under the Bert J. Harris, Jr., Private

Property Rights Protection Act ("Bert Harris Act" or "Act"), section 70.001,

Florida Statutes (2012). The Appellant, Brevard County ("County"), appeals a summary judgment ruling for Appellee, Waters Mark Development Enterprises, LC ("Waters Mark") on the issue of liability under the Act. Because the County came forward with sufficient evidence that Waters Mark's proposed development faced regulatory barriers, which, apart from the County's challenged action, could have barred the development, we reverse the trial court's entry of summary judgment for Waters Mark. The County also appeals the denial of its competing motion for summary judgment. The Court lacks jurisdiction over that ruling and, thus, we dismiss that aspect of the appeal.

### Undisputed Facts and Procedural History

In 2006, Waters Mark purchased land ("Property") in Brevard County with plans to develop a 90-unit residential subdivision covering approximately 97 acres of the Property. At the time, the comprehensive future land use plan ("comprehensive plan")[1] permitted the building of one residence per acre on the Property. Although Waters Mark's proposed

---

[1] A comprehensive plan is a statutorily mandated legislative plan to control and direct the use and development of property within a county or municipality. *Citrus Cnty. v. Halls River Dev., Inc.*, 8 So. 3d 413, 420 (Fla. 5th DCA 2009). The plan is similar to a constitution for all future development within the governmental boundary. *Id*. at 420–21. The plan is implemented through zoning, which involves the exercise of discretionary powers within the limits imposed by the comprehensive plan. *Id*. at 421.

development complied with that aspect of the comprehensive plan, it still needed to apply for and obtain approval from the County and other agencies to proceed.

The St. Johns River Water Management District ("District") was among the governmental agencies whose approval Waters Mark needed to develop a residential subdivision on the Property. After a year of back-and-forth between the District and Waters Mark, it appears important issues remained unresolved. For example, it appears Waters Mark had yet to demonstrate that the development would not affect water quality or impact the surrounding wetlands. Without curing the concerns raised by the District, Waters Mark's application with the District languished, leading it to inform Waters Mark that its application would be deemed abandoned if it did not timely move forward in the process. Eventually, Waters Mark abandoned its first attempt to develop the Property.

More than a year after Waters Mark abandoned its first application, the County adopted Ordinance 09-21 ("Ordinance"). The Ordinance amended the comprehensive plan by lowering the developmental density for the Property and surrounding land. The new developmental density allowed only one residence per 2.5 acres.

3

Approximately three years after the Ordinance was adopted, Waters Mark submitted a new application with the County for a similar subdivision. Per the new application, Waters Mark sought to develop a similarly designed 84-unit residential subdivision covering approximately 97 acres of the Property.

As part of the initial review of the second application, the County sent Waters Mark a letter with several "pre-application review comments," including one that "disapproved" of the proposed development for exceeding the new developmental density in the amended comprehensive plan ("Comments Letter"). In apparent response to the Comments Letter and without completing the other steps of the County's application process,[2]

---

[2] The application process for the construction of a residential subdivision in Brevard County consists of three stages: 1) the preapplication conference; 2) the construction plans and preliminary plat review; and 3) the final plat review. Brevard Cnty., Fla., Land Dev. Regul. ("LDR") § 62-2805(a)(1) ("The first stage is the preapplication conference. This stage is mandatory for the applicant, and allows the applicant to solicit comments from the reviewing agencies on the proposed subdivision prior to submittal and review of preliminary plat and construction plans."); *Id*. at § 62-2805(a)(2) ("The second stage is the construction plans and preliminary plat review. The applicant formally submits construction plans and preliminary plat for review and approval by the county reviewing agencies."); *Id*. at § 62-2805(a)(3) ("The third stage is final plat review. This stage follows construction plans and the preliminary plat review and is the final stage necessary before recording a plat. The applicant, after obtaining construction plans and preliminary plat approval, may receive final plat approval by the board.").

Waters Mark discontinued its second effort to develop the Property and sent a pre-suit notice to the County, claiming that its application of new density requirements to Waters Mark's second proposed development inordinately burdened an existing use of the Property in violation of the Bert Harris Act.

Waters Mark filed suit. The County answered and asserted several affirmative defenses, of which one is determinative in this interlocutory appeal, namely, that regardless of the residential density allowed, Waters Mark could not have developed its desired residential subdivision. This was the issue at the heart of Waters Mark's motion for summary judgment, with each party offering evidence in support of its position. Without any mention of the County's responsive argument and the evidence on which it relied, the trial court granted Waters Mark's motion for summary judgment and denied the County's competing motion for summary judgment. This appeal challenges both rulings.

The New Summary Judgment Standard

The Florida Supreme Court recently amended Florida Rule of Civil Procedure 1.510 to conform with the federal summary judgment standard. Fla. R. Civ. P. 1.510(a) (2021) ("The summary judgment standard provided for in this rule shall be construed and applied in accordance with the federal summary judgment standard.").

Under the amended rule, which applies to the orders being appealed, summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. Looking to the federal summary judgment standard, an issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant does so, then the burden shifts to the non-moving party to demonstrate that there are genuine factual disputes that preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To do so, the non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford–El v. Britton*, 523 U.S. 574, 600 (1998).

6

In determining whether a genuine dispute of material fact exists, the court must view the evidence and draw all factual inferences therefrom in a light most favorable to the non-moving party and must resolve any reasonable doubts in that party's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party[.]" *Matsushita*, 475 U.S. at 587.

We review the order granting summary judgment and issues involving statutory interpretation de novo. *Dean Wish, LLC v. Lee Cnty*., 326 So. 3d 840, 845 (Fla. 2d DCA 2021), *review denied*, No. SC21-1529, 2022 WL 852956 (Fla. Mar. 23, 2022).

<u>Waters Mark's Motion for Summary Judgment</u>

The County argues that the trial court erred by granting summary judgment in favor of Waters Mark because there is a genuine dispute of material fact as to whether the application of the lower density limitation inordinately burdened an existing use of the Property.[3] In order to analyze

---

[3] The County raised other arguments challenging the order granting Waters Mark's motion for summary judgment, but we need not address those arguments because, as discussed in this decision, there are genuine issues of material fact that preclude the entry of summary judgment in Waters Mark's favor.

7

the County's argument, we begin with the requirements of the Bert Harris Act.

The Act provides a mechanism to compensate landowners whose property is affected by government action not rising to the level of a taking. § 70.001(1), Fla. Stat. (2012).[4] To prevail under the Act, a property owner must prove that "a specific action of a governmental entity has inordinately burdened an existing use of real property or a vested right to a specific use of real property." § 70.001(2), Fla. Stat. (2012).

An "existing use" is defined as "[a]ctivity or such reasonably foreseeable, nonspeculative land uses which are suitable for the subject real property . . . which have created an existing fair market value in the property greater than the fair market value of the actual, present use or activity on the real property." § 70.001(3)(b)2., Fla. Stat. (2012). Here, the County agrees that under the old comprehensive plan Waters Mark had the ability to build one residence per acre and therefore had an "existing use" under the Act.[5]

But a change in land use which impacts an "existing use" does not necessarily equal an "inordinate burden." *Karenza Apartments, LLP v. City*

---

[4] The version of the Act in existence at the time of the Comments Letter and pre-suit notice apply to this case.

[5] Waters Mark does not argue that it had a vested right to a specific use of the Property.

*of Miami*, 47 Fla. L. Weekly D1497, D1498 (Fla. 3d DCA July 13, 2022) (explaining that even if a landowner has an existing use under the Act the trial court must examine and objectively analyze whether that landowner's investment-backed expectation for the property is objectively reasonable). An inordinate burden is defined as "an action of one or more governmental entities [that] has directly restricted or limited the use of real property such that the property owner is permanently unable to attain the reasonable, investment-backed expectation for the existing use of the real property . . . ." § 70.001(3)(e)1., Fla. Stat. (2012). This is akin to a causation requirement that each landowner must prove to prevail. If Waters Mark could not have developed the proposed residential subdivision for other reasons, then the County did not cause an "inordinate burden."

Relatedly, if Waters Mark could not have developed the proposed residential subdivision for other reasons, then Waters Mark's expectation to the develop the Property was unreasonable. This is an objective test. *Karenza Apartments, LLP*, 47 Fla. L. Weekly at D1498. Where unrelated physical or regulatory barriers stand in the way of a landowner's intended development, it cannot be said that the landowner's investment-backed expectation is reasonable. *Ocean Concrete, Inc. v. Indian River Cnty, Bd. of Cnty. Comm'rs*, 241 So. 3d 181, 189 (Fla 4th DCA 2018); *see also City of*

*Jacksonville v. Coffield*, 18 So. 3d 589, 599 (Fla. 1st DCA 2009); *Palm Beach Polo, Inc. v. Vill. of Wellington*, 918 So. 2d 988, 995 (Fla. 4th DCA 2006).

With this in mind, we find that the trial court erred in granting summary judgment for Waters Mark on the issue of liability. Summary judgment was inappropriate on this record because the County presented evidence, which, when viewed in the light most favorable to the County, could lead a rational trier of fact to find against Waters Mark on the issue of inordinate burden. Specifically, the County identified the Comments Letter it sent to Waters Mark after the County completed its initial review of the second application. The Comments Letter listed various problems, aside from the developmental density, that apparently had to be addressed by Waters Mark before its application could move onto the next stage of review.

Instead of attempting to address the identified problems, it appears, from this record, that Waters Mark simply abandoned its application for a second time. This is problematic because it leaves unanswered the question of whether Waters Mark could ever obtain the approvals needed to proceed, especially the approval of the District, which never consented to Waters Mark's earlier proposed development that complied with the comprehensive plan in effect. As the County correctly argues, considering the regulatory history between Waters Mark and the District, it cannot be assumed that the

District would have permitted the development. When the litany of issues listed in the Comments Letter are viewed in a light most favorable to the County, we find there is a genuine dispute of material fact as to whether other regulatory barriers, apart from the new density requirements, prevented the Property from being developed as intended.

Waters Mark attempts to avoid this result by arguing that the Act does not require a proposed use of the Property to be otherwise fully approved and shovel ready. But Waters Mark's argument ignores the fact that it was not even that close. On this record, Waters Mark was at the beginning of a multistage application process that it previously failed to complete with questions remaining as to whether it would obtain the approval of other agencies, including the District, which withheld its consent in the past. Because the County came forward with sufficient evidence to create a genuine issue of material fact that Waters Mark's proposed development faced unrelated regulatory barriers, which alone could have barred the development, summary judgment for Waters Mark was error on this record and we reverse.

11

<u>The County's Motion for Summary Judgment</u>

The County also appeals the trial court's denial of its motion for summary judgment, which is not presently appealable.

"As a general rule, a party may not seek interlocutory review by appeal of a nonfinal order, including an order denying a motion for summary judgment." *Miami-Dade Cnty. v. Pozos*, 242 So. 3d 1152, 1153 (Fla. 3d DCA 2017). An exception exists for specific nonfinal orders listed and described in Florida Rule of Appellate Procedure 9.130, among which are nonfinal orders determining "that a governmental entity has taken action that has inordinately burdened real property within the meaning of section 70.001(6)(a), Florida Statutes." Fla. R. App. P. 9.130(a)(3)(C)(vii).

While the order granting Waters Mark summary judgment made such a determination, the same cannot be said for the trial court's denial of the County's competing motion. By denying the County's competing motion, the trial court declined to make such a determination. To read Rule 9.130(a)(3)(C)(vii) as authorizing the appeal of a denial of a motion for summary judgment would require this Court to replace the word "that" with "whether." Because the exception carved out by Rule 9.130(a)(3)(C)(vii) authorizes only a nonfinal appeal of an order determining "**that** a governmental entity **has taken** action that has inordinately burdened real

12

property . . .," we lack jurisdiction to review the denial of the County's motion for summary judgment. Fla. R. App. P. 9.130(a)(3)(C)(vii) (emphasis added). As a result, we express no view on the arguments raised in the County's motion for summary judgment and dismiss that aspect of the County's appeal for want of jurisdiction.

In sum, the County came forward with sufficient evidence that Waters Mark's proposed development faced regulatory barriers, unrelated to the application of the Ordinance, which created a genuine issue of material fact as to whether the development could proceed as planned. As such, summary judgment for Waters Mark was error on this record.

DISMISSED in part; REVERSED in part; and REMANDED for further proceedings.

LAMBERT, C.J., and WALLIS, J., concur.

13