# Third District Court of Appeal

**State of Florida**

Opinion filed November 28, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2904
Lower Tribunal No. 15-29157
_____

**State of Florida Department of Children and Families,**
Appellant,

vs.

**Yunior Feliciano and Mirelys Morales, etc.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Gisela Cardonne Ely, Judge.

Marrero & Wydler and Oscar E. Marrero and Lourdes Espino Wydler, for appellant.

Alan D. Sackrin (Hallandale Beach), for appellees.

Before ROTHENBERG, C.J., and SALTER and LUCK, JJ.

SALTER, J.

Florida's Department of Children and Families ("DCF") appeals a circuit court's non-final order denying DCF's motion to dismiss the complaint filed against it (and other defendants) by the personal representatives and parents ("Plaintiffs") following the tragic drowning of their three year-old son in 2013. The appeal from that non-final order raises a threshold and debatable issue regarding our jurisdiction. As detailed below, we are at present constrained to dismiss this appeal for lack of jurisdiction.

Applicable Rule; Single-Issue Motion and Denial

DCF maintains that we have jurisdiction over this appeal as a category of non-final orders specifically enumerated in Florida Rule of Appellate Procedure 9.130(a)(3)(C)(xi)—orders which determine "that, as a matter of law, a party is not entitled to sovereign immunity." Although the order denied the motion to dismiss without including grounds[1] (words to the effect that, "as a matter of law, DCF is not entitled to sovereign immunity"), DCF argues that the record demonstrates that sovereign immunity was the single basis presented for, and the result of, the trial court's ruling.

The record discloses that the Plaintiffs asserted only one claim, Count VI, against DCF. DCF's motion to dismiss Count VI specified only one basis for

---

[1] When requested to state those specific grounds at the hearing on DCF's motion, the trial court refused: "No, I don't need to give you the basis. I'm just letting [Plaintiffs] proceed and it's denied, period."

dismissal: "This claim must be dismissed with prejudice as DCF is entitled to sovereign immunity because no statutory or common law duty exists." The Plaintiffs alleged in Count VI that DCF was negligent in its inspection of a day care facility's swimming pool area at a licensed day care facility that was not owned or operated by DCF. The Plaintiffs conceded in Count VI that the child who drowned was not in DCF's care or custody. DCF's motion to dismiss did not raise any other issue, and it provided legal authority supporting dismissal on the basis of sovereign immunity.

In a memorandum opposing DCF's motion to dismiss, the Plaintiffs argued that DCF is not sovereignly immune because Chapters 401 and 402, Florida Statutes (2013), charge DCF with a statutory duty of care for children in child day care facilities. At the hearing on DCF's motion, sovereign immunity was the only issue before the trial court. The trial court denied the motion to dismiss, but declined to state in open court or the written order that the basis was the denial of sovereign immunity. This appeal followed.

This Court's Opinions

In Citizens Property Insurance Corp. v. Sosa, 215 So. 3d 90 (Fla. 3d DCA 2016), a state-created insurer (Citizens) sought to appeal a trial court order denying the insurer's motion to dismiss an insured's statutory, first-party bad faith claims on

3

grounds of sovereign immunity.[2]     Citizens contended that the order was an appealable non-final order under the rule at issue here, Florida Rule of Appellate Procedure 9.130(a)(3)(C)(xi).  We dismissed the appeal for lack of jurisdiction, because "the order on appeal does not state that the motion to dismiss is denied on the basis that Citizens lacks sovereign immunity," and because the trial court did not reach or rule on that issue. Sosa, 215 So. 3d at 91.

In Miami-Dade County v. Pozos, 242 So. 3d 1152 (Fla. 3d DCA 2017), reh'g denied, 242 So. 3d 540 (Fla. 3d DCA 2018) (Rothenberg, C.J., dissenting), a divided panel of this Court considered a county's appeal from a non-final order denying summary judgment.  The county's motion was based on a claim of sovereign immunity, but the trial court's order denying the motion merely stated that the motion was denied.  No further elaboration was provided in the order.  The majority opinion reviewed the history of Florida Rule of Appellate Procedure 9.130(a)(3)(C)(xi) and the earlier, similarly-worded provision (9.130(a)(3)(C)(v))[3] authorizing appeals from non-final orders determining "that, as a matter of law, a party is not entitled to workers' compensation immunity."

---

[2] Citizens' immunity from such claims was confirmed by the Florida Supreme Court in Citizens Property Insurance Corp. v. Perdido Sun Condominium Ass'n, Inc., 164 So. 3d 663 (Fla. 2015).

[3] Before 1996, this subdivision was numbered (vi) within Rule 9.130(a)(3)(C).

The majority opinion in <u>Pozos</u> observed that case law interpreting the workers' compensation immunity provision in subdivision (v) of Rule 9.130(a)(3)(C) has held uniformly that an order denying summary judgment is not appealable under the Rule "unless the trial court's order <u>expressly</u> provides that it is making a determination that, as a matter of law, the party is not entitled to immunity." <u>Pozos</u>, 242 So. 3d at 1155 (original emphasis). The dissenting opinion in the case, reiterated in its subsequent dissent from the panel's denial of rehearing and the Court's denial of rehearing en banc, urges that a rule change or further determination by the Florida Supreme Court is necessary to provide recourse to parties entitled to sovereign immunity but forced to proceed with a lengthy and expensive defense because the initial order of denial has itself been held by the district courts of appeal to be immune from review.

Here, as in our more recent opinion addressing Rule 9.130(a)(3)(C)(xi), <u>City of Coral Gables v. Blanco</u>, 248 So. 3d 1211 (Fla. 3d DCA 2018), our own precedent requires the dismissal of the appeal. There is pending, however, a petition for review to the Florida Supreme Court which recognizes that such dismissals are inconsistent with the original, federal rationale for permitting interlocutory appeals from orders denying claims of immunity.[4]

---

[4]  As detailed in the First District opinion discussed below, federal courts have followed a more expansive interpretation regarding interlocutory review of orders

<u>The First District's Opinion in Florida Highway Patrol v. Jackson</u>

The First District began its opinion in <u>Florida Highway Patrol v. Jackson</u>, 238 So. 3d 430, 431 (Fla. 1st DCA 2018), with this observation:

> Immunity from suit is meaningless if a court denies immunity to a party entitled to it, forcing the party to stand trial and appeal the improper denial of immunity. This case concerns our jurisdiction to hear an interlocutory appeal of an order denying immunity to a party claiming entitlement to it. The trial court denied a motion for summary judgment filed by the Florida Highway Patrol (FHP), which had argued, among other things, that it was immune from suit. FHP asserts that we have jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(xi), which permits appellate review of non-final orders that determine "as a matter of law" that a party is not entitled to sovereign immunity. Because the order under review did not explicitly determine, as a matter of law, that FHP was not entitled to sovereign immunity, we dismiss this appeal. But because we perceive an inconsistency between the Florida Supreme Court's decision in <u>Beach Community Bank v. City of Freeport</u>, 150 So.3d 1111 (Fla. 2014), and other cases regarding the specificity with which a court must deny an immunity motion "as a matter of law" to permit interlocutory appellate review, we certify a question of great public importance to the Florida Supreme Court.

The First District certified to the Florida Supreme Court as a question of great public importance the following question, after observing that "It is unclear if the Florida Supreme Court has departed from narrowly interpreting 'as a matter of law' to permit appellate review of orders denying sovereign immunity when the record

---

denying motions claiming sovereign immunity, applying the United States Supreme Court's decision in <u>Mitchell v. Forsyth</u>, 472 U.S. 511 (1985).

6

demonstrates that the defendant is entitled to such immunity and was erroneously required to defend itself.":

> DOES RULE 9.130 PERMIT AN APPEAL OF A NON-FINAL ORDER DENYING IMMUNITY IF THE RECORD SHOWS THAT THE DEFENDANT IS ENTITLED TO IMMUNITY AS A MATTER OF LAW BUT THE TRIAL COURT DID NOT EXPLICITLY PRECLUDE IT AS A DEFENSE?

Id. at 437-38.

The Florida Highway Patrol, represented by the Office of the Attorney General and Solicitor General, has petitioned for discretionary review by the Florida Supreme Court on the basis of the certified question and the Florida Supreme Court's decision in Beach Community Bank, supra. Florida Highway Patrol v. Jackson, No. SC18-468 (jurisdictional briefing completed May 1, 2018).[5]

We hazard no guess as to whether the Florida Supreme Court will accept jurisdiction or, if it does, how it will decide this issue. Pending further guidance on the question from that Court, or amendment of the applicable rule, we remain obedient to our own precedent.

Appeal dismissed.

**ANY POST-OPINION MOTION MUST BE FILED WITHIN SEVEN DAYS. A RESPONSE TO THE POST-OPINION MOTION MAY BE FILED WITHIN FIVE DAYS THEREAFTER.**

---

[5] The Florida Supreme Court has stayed disposition of Miami-Dade County's petition for review of this Court's decision in Pozos as a "tag case" pending disposition of the petition in Florida Highway Patrol. Miami-Dade County v. Pozos, No. SC18-1118 (Order entered July 19, 2018).

ROTHENBERG, C.J. (concurring in result only).

This appeal is a clear example of why we should not be interpreting rule 9.130(a)(3)(C)(xi) as requiring a trial court that **determines, as a matter of law,** that a party is not entitled to sovereign immunity **as a matter of law** to explicitly say so in its order, as the majority in this case, Miami-Dade County v. Pozos, 242 So. 3d 1152 (Fla. 3d DCA 2017), and Citizens Property Insurance Corp. v. Calonge, 246 So. 3d 447 (Fla. 3d DCA 2018), have concluded. In this case, the plaintiff asserted only one claim against Florida's Department of Children and Families ("DCF"), and specified only one basis for dismissal: that DCF was entitled to sovereign immunity as a matter of law, which, in this case, turns on a question of law, not a question of fact. When the trial court denied the motion, DCF specifically asked the trial court to state the basis in its order for its denial of its motion to dismiss. The trial court, however, refused to do so, stating: **"No, I don't need to give you a basis. I'm just letting [the plaintiff] proceed and it's denied, period."**

Although I disagree with the majority's interpretation of rule 9.130(a)(3)(C)(xi) and its reliance on Citizens Property Insurance Corp. v. Sosa, 215 So. 3d 90 (Fla. 3d DCA 2016), I recognize that we are bound by this Court's precedent in Pozos and Calonge. I therefore, concur in result only, and continue to

express my disagreement with the opinions issued from our Court upon which I am now bound. It is my continuing position that this Court's precedent interpreting rule 9.130(a)(3)(C)(xi) is unsupported by the plain language of the rule, the purpose of the rule, the relevant case law, and common sense.

### This case highlights the problem with this Court's interpretation of rule 9.130(a)(3)(C)(xi)

The plaintiff alleges in Count IV that DCF was negligent in its inspection of a day care facility's swimming pool area at a licensed day care facility that was **not owned or operated by DCF**. The **plaintiff concedes** in Count IV that the **child who drowned was not in DCF's care or custody**. DCF, therefore, argued, and provided well-settled legal authority supporting its position that it was entitled to immunity as a matter of law.

In a memorandum opposing DCF's motion to dismiss, the plaintiff argued that DCF is not sovereignly immune because Chapters 401 and 402, Florida Statutes (2013), charge DCF with a statutory duty of care for children in child day care facilities. Thus, the only issue before the trial court was a question of law. Either Chapter 401 and/or 402 create a duty of care precluding immunity or they do not. By denying DCF's motion to dismiss, based solely on DCF's claimed immunity, the trial court has clearly made a legal determination that Chapters 401 and/or 402 apply and, thus, as a matter of law, DCF is not entitled to sovereign immunity. Thus, despite the trial court's refusal to issue an order stating the ground(s) for denying

9

DCF's motion to dismiss, we should exercise our jurisdiction and resolve the legal question.

## A. Rule 9.130(a)(3)(C)(xi)

Rule 9.130(a)(3)(C)(xi) provides as follows: "Appeals to the district courts of appeal of non-final orders are limited to those that . . . determine . . . that, as a matter of law, a party is not entitled to sovereign immunity." This text does not contain any words limiting the appeal of non-final orders to those orders that *expressly* state that a party is not entitled to sovereign immunity. The word "determination," from which the word "determine" derives, simply means "[t]he act of deciding something officially." *Determination*, Black's Law Dictionary (10th ed. 2014); see also *Legally Determined*, Black's Law Dictionary (10th ed. 2014) (defining "legally determined" as "decided by legal process"); Charter Sch. USA, Inc. v. John Doe No. 93, 152 So. 3d 657, 661 (Fla. 3d DCA 2014) (concluding, in the context of analyzing Florida Rule of Civil Procedure 1.550, that "'determined' means the point in time when the trial judge, in this case signed an order ruling on the school's post-trial motions"). Indeed, if the word "determined" somehow signified an express statement, then the phrase "expressly determined" would be redundant. It is therefore clear from the text of rule 9.130(a)(3)(C)(xi) that a party's ability to appeal non-final orders under the rule is not as limited as this Court has

10

found, and it is only possible to reach a contrary conclusion by adding language to the rule.

## B. **This Court's interpretation of the rule is in conflict with the purpose of the rule**

The purpose behind amending rule 9.130 to include rule 9.130(a)(3)(C)(xi) was to give meaningful effect to sovereign immunity from suit. This purpose is being arbitrarily frustrated by treating only those orders expressly denying entitlement to sovereign immunity as appealable. The Florida Supreme Court has specifically noted the importance of providing interlocutory review to parties who are entitled to sovereign immunity from suit but were denied that right at the trial court level. See Keck v. Eminisor, 104 So. 3d 359, 360 (Fla. 2012).

In Keck, when addressing whether interlocutory review should be available to defendants to appeal non-final orders denying motions for summary judgment based on a claim of sovereign immunity under section 768.28(9)(a), Florida Statutes (2005), the Florida Supreme Court stated the following:

> [I]f a defendant who is entitled to the immunity granted in section 768.28(9)(a) is erroneously named as a party defendant and is required to stand trial, that individual has effectively lost the right bestowed by statute to be protected from even being named as a defendant. **If orders denying summary judgment based on claims of individual immunity from being named as a defendant under section 768.28(9)(a) are not subject to interlocutory review, that statutory protection becomes essentially meaningless for the individual defendant.**

11

Id. at 366 (emphasis added). Thus, the Florida Supreme Court recommended a change to the rules of appellate procedure to allow for appeals "where an individual defendant who claims immunity under 768.28(9)(a) is denied that immunity and the issue turns on a matter of law." Id. at 369. Specifically, the Court requested that the Florida Bar Appellate Court Rules Committee consider "whether the categories of non-final orders in rule 9.130(a)(3) should be expanded to include the denial of any claim of immunity **where the question presented is solely a question of law**." Id. at 370 (emphasis added). Upon recommendations from the Florida Bar Appellate Court Rules Committee, the Florida Supreme Court adopted rule 9.130(a)(3)(C)(xi), which now permits appeals from non-final orders that determine, as a matter of law, a party is not entitled to sovereign immunity.

In order for a party's entitlement to sovereign immunity **from suit** to constitute an effective protection, the party must have a meaningful ability to assert its entitlement to sovereign immunity at the **very beginning of litigation**. To hold that the non-final order must expressly state that a party is not entitled to sovereign immunity, where it is otherwise clear that the trial court made such a determination, would arbitrarily restrict a party's ability to appeal an adverse ruling regarding its entitlement to sovereign immunity from suit in circumstances where the trial court merely issues an unelaborated order denying a motion to dismiss that only raised the party's claim to sovereign immunity from suit. To withhold an appellate remedy to

12

a party who is sovereignly immune from suit as a matter of law until the case has been fully litigated, simply because the trial court has failed or refused, as the trial court did in this case, to issue an elaborated order, is contrary to and thwarts the very purpose and intent of the rule change.

## C. The case law does not support the majority's position

The majority cites to two opinions issued by this Court in support of its position that this Court lacks jurisdiction over the trial court's unelaborated orders denying Citizens' motions to dismiss: Sosa and Pozos. However, in Sosa, the trial court **specifically stated that it was not ruling on sovereign immunity**, and in Pozos, this Court incorrectly relied on Sosa and disregarded a decision by the Florida Supreme Court which reviewed unelaborated orders denying motions to dismiss when it was clear that the trial court determined, as a matter of law, that the party was not entitled to immunity.

### (1) Sosa

In Sosa, Citizens moved to strike the bad-faith allegations and to dismiss and/or strike counts II and III based on its sovereign immunity from bad-faith claims. Sosa, 215 So. 3d at 91. However, the record in Sosa reflected that the trial court **did not even reach the issue of sovereign immunity** when it denied Citizens' motion to dismiss. Id. Instead, the trial court abated or stayed any action on those counts until the issues of coverage and liability were resolved. Id. Because the trial court

13

did not rule on Citizens' sovereign immunity claim, reliance on that case is, respectfully, misplaced.

**(2) Pozos**

The procedural posture in Pozos differs from the instant case. In Pozos, Miami-Dade County raised the issue of its sovereign immunity in a motion for summary judgment rather than in a motion to dismiss. Whereas a motion to dismiss is designed to test the legal sufficiency of the complaint assuming that the alleged facts are true, Minor v. Brunetti, 43 So. 3d 178, 179 (Fla. 3d DCA 2010), a motion for summary judgment usually rests on whether the evidence developed in the record supports only one set of facts that entitles a party to judgment as a matter of law. In Pozos, this Court found that it lacked jurisdiction because the trial court denied the County's motion for summary judgment without specifying whether it determined, as a matter of law, that the County was not entitled to sovereign immunity or whether it found that there were "disputed issues of material fact or ongoing discovery that would render summary judgment premature." Pozos, 242 So. 3d at 1157.

Additionally, two different issues were argued in Pozos: (1) whether the County was entitled to summary judgment based on its claim of sovereign immunity; and/or (2) whether there were material issues of disputed fact as to whether the County owed the plaintiff a duty of care. Because the trial court issued an

14

unelaborated order, the majority found that it was impossible to determine the trial court's reasoning for denying the County's motion for summary judgment.

**D. This Court's interpretation of the rule is in conflict with decisions by the Florida Supreme Court**

### (1) Beach Community Bank

This Court's interpretation of rule 9.130(a)(3)(C)(xi) is in conflict with the Florida Supreme Court's interpretation of the rule. In Beach Community Bank v. City of Freeport, Florida, 150 So. 3d 1111 (Fla. 2014), the Florida Supreme Court accepted jurisdiction to review the First District Court of Appeal's decision in City of Freeport v. Beach Community Bank, 108 So. 3d 684 (Fla. 1st DCA 2013). The City of Freeport moved to dismiss the complaint based on its immunity from suit. The trial court issued an order denying the City's motion to dismiss. A review of the record before the First District and the Florida Supreme Court reflects that the order in question merely stated that the City's "**Motion to Dismiss with Prejudice is denied and Defendant shall file a responsive pleading within 20 days of the date of this Order**." (emphasis added).

In City of Freeport, the City filed a petition for writ of certiorari to review the non-final order on the basis that the City was entitled to sovereign immunity as a matter of law and thus the trial court departed from the essential requirements of law by denying its motion to dismiss. City of Freeport, 108 So. 3d at 686. The First

15

District agreed with the City, granted the petition, and quashed the order under review. Id. at 691. On review to the Florida Supreme Court, the original question was whether the District Court could exercise certiorari jurisdiction to review the trial court's non-final order. Beach Cmty. Bank, 150 So. 3d 1112. However, because the Florida Bar Appellate Court Rules Committee's proposed amendment to rule 9.130 was pending before the Florida Supreme Court and the Court concluded that the "case falls squarely within the new rule amendment," the Court determined "that the City should be entitled to the benefit of the new rule." Id. at 1113. Specifically, the Court held that the proposed amendment "answers the question that the City asks this Court to confront in this case. **This amendment permits district courts to review nonfinal orders of decisions determining entitlement to sovereign immunity where the case involves a pure legal question**." Id. (emphasis added).

Importantly, although the trial court's order simply denied the City's motion to dismiss and ordered the City to file responsive pleadings within twenty days, and the order did not include the language that the denial of the motion to dismiss on the basis of sovereign immunity was a denial as a matter of law, the First District reviewed the order and determined that the City was entitled to sovereign immunity and the Florida Supreme Court reviewed the same order and agreed. Beach Cmty. Bank, 150 So. 3d at 1114. Thus, the Florida Supreme Court quashed the First

16

District's decision to the extent that it resolved the issue based on certiorari review, but approved the decision based on the amendment to rule 9.130, id. at 1114-15, and issued its opinion on the very same day that it approved the amendment to rule 9.130.

Judge Luck, in his concurring opinion, takes issue with reliance on Beach Community Bank as supporting authority that even though the trial court's order does not expressly state that it has determined that the defendant is not entitled to sovereign immunity as a matter of law, the order may have nevertheless made such a determination. Judge Luck argues that an appellate court may not look to the record, and must instead, confine its review to the order itself. And, although the Florida Supreme Court did exactly the opposite of what he contends the statute requires, we cannot rely on that fact because the Florida Supreme Court did not mention that fact in its opinion. In other words, even though: (1) the trial court's order states no more than the "Motion to Dismiss with Prejudice is denied and Defendant shall file a responsive pleading within 20 days of the date of this Order"; (2) the order did not contain any express language stating that the trial court had determined as a matter of law the City was not entitled to sovereign immunity; (3) the First District Court of Appeal reviewed the order and the record and determined that the City was entitled to sovereign immunity as a matter of law; and (4) the Florida Supreme Court reviewed the First District Court's opinion and the record, which included the trial court's order, we must ignore that procedural history

17

because it was not mentioned in the Florida Supreme Court's opinion. However, taking note of the order on appeal does not require as Judge Luck suggests—digging through the record. It merely requires a review of the order on appeal. Just because the order in Beach Community Bank does not support the position taken by the majority, it cannot be ignored. In fact, I submit that the only way to conclude that we do not have jurisdiction in the instant case is to **ignore** the **record** in this case and the **record** and **holding** in Beach Community Bank. Judge Luck contends we must ignore the record. I contend we cannot ignore the record, and the Florida Supreme Court should resolve this question for the appellate courts.

**(2) Keck**

Although the Florida Supreme Court issued its opinion in Keck prior to the adoption of rule 9.130(a)(3)(C)(xi), it has not receded from Keck and the Florida Supreme Court in Keck held that "an order denying summary judgment based on a claim of individual immunity under section 768.28(9)(a) is subject to interlocutory review where the issue turns on a question of law." Keck, 104 So. 3d at 366. In Keck, the trial court issued an order denying Keck's motion for summary judgment based on his claim of immunity. Keck, 104 So. 3d at 362. Keck sought review by petitioning the First District for a writ of certiorari. Id. The First District concluded that it lacked certiorari jurisdiction and therefore, it denied the petition without addressing the merits of the petition. Id. The First District, however, certified a

18

question to the Florida Supreme Court; the Florida Supreme Court accepted jurisdiction; and the Court rephrased the certified question as follows:

> Should review of the denial of a motion for summary judgment based on a claim of individual immunity under section 768.28(9)(a), Florida Statutes, await the entry of a final judgment in the trial court to the extent that the order turns on an issue of law?

Id. at 363.

In answering the certified question, the Florida Supreme Court noted that in Tucker v. Resha, 648 So. 2d 1187 (Fla. 1994), the Court had "examined whether to expand the category of non-final appealable orders to include orders denying summary judgment based on a qualified immunity claim," and because of the nature of the rights involved, interlocutory review must be available to an individual whose claim of qualified immunity was denied by the trial court. Keck, 648 So. 2d at 364. The Court specifically noted:

> Because qualified immunity of public officials involves *immunity from suit* rather than a mere defense to liability, we reasoned that immunity from suit is effectively lost if a case is erroneously permitted to go to trial because a trial court's order denying qualified immunity cannot be reviewed on appeal from a final judgment as the public official cannot be re-immunized if erroneously required to stand trial or face the other burdens of litigation.

Id. at 364 (emphasis in original) (internal quotations omitted) (citing Tucker, 648 So. 2d at 1189). The Florida Supreme Court went on to recognize that in Tucker,

> [w]e stressed that if orders denying summary judgment based upon claims of qualified immunity are not subject to interlocutory review,

19

the qualified immunity of public officials is illusory and the very policy that animates the decision to afford such immunity is thwarted. We held that an order denying summary judgment based upon a claim of qualified immunity should be subject to interlocutory review to the extent that the order turns on an issue of law.

Keck, 104 So. 3d at 365 (internal citations and quotations omitted).

The Florida Supreme Court in Keck, therefore, concluded that:

[I]f a defendant who is entitled to the immunity granted in section 768.28(9)(a) is erroneously named as a party defendant and is required to stand trial, that individual has effectively lost the right bestowed by statute to be protected from even being named as a defendant. **If orders denying summary judgment based on claims of individual immunity from being named as a defendant under section 768.28(9)(a) are not subject to interlocutory review, that statutory protection becomes essentially meaningless for the individual defendant**.
For the above reasons, we answer the rephrased question in the negative and hold that **an order denying summary judgment based on a claim of individual immunity under section 768.28(9)(a) is subject to interlocutory review where the <u>issue turns on a question of law.</u>**

Keck, 104 So. 3d at 366 (emphasis added).

Based on the Florida Supreme Court's ruling in Keck, Justice Pariente, in her concurring opinion, recommended that the Florida Bar Appellate Court Rules Committee submit a proposed amendment, as previously discussed in this opinion, and that when it addressed the rule amendment, that it do so more broadly to address interlocutory appeals of immunity claims in a comprehensive manner. Id. at 369.

While I recognize that the Florida Supreme Court was addressing individual immunity under section 768.28(9)(a), rather than sovereign immunity granted under section 627.351(6)(s), in <u>Keck</u>, Justice Pariente asked the Florida Bar Appellate Court Rules Committee to address interlocutory appeals of immunity claims in a comprehensive manner, and rule 9.130(a)(3)(C)(xi) was later amended in direct response to Justice Pariente's request. It also makes no sense to treat orders that deny an individual's immunity from suit any differently than orders denying an entity's immunity from suit. In both instances, the defendant who is entitled to immunity from suit as a matter of law should not be forced to litigate the plaintiff's claims simply because the trial court issues an unelaborated order.

### E. <u>Motion for summary judgment v. motion to dismiss</u>

I recognize that the Florida Supreme Court has ruled in <u>Hastings v. Demming</u>, 694 So. 2d 718, 720 (Fla. 1997), and <u>Reeves v. Fleetwood Homes of Florida, Inc.</u>, 889 So. 2d 812, 820 (Fla. 2004), that nonfinal orders denying **summary judgment** are not reviewable on appeal unless the trial court's order explicitly states that the defense of workers' compensation immunity is not available to the party as a matter of law. But that is because whether a party is entitled to workers' compensation immunity is almost always a factual issue. <u>See</u> <u>Cinema Beverages of Miami, Inc. v. Mortimer</u>, 689 So. 2d 276, 277 (Fla. 3d DCA 1995) ("Establishment of workers' compensation immunity usually requires the employer to bring forth facts from

21

outside the four corners of the complaint, which necessarily requires a motion for summary judgment.").

I submit that while an order denying a motion for **summary judgment**, where factual issues are at play, needs to make an explicit legal determination, an order denying a motion to **dismiss** a complaint against a defendant claiming sovereign immunity, which is based solely on the four corners of the complaint, need not incant these magic words to be reviewable on appeal. That is because, by denying the motion to dismiss, the trial court has denied the defendant's claim that it is entitled to sovereign immunity as a matter of law. On a motion to dismiss on a basis of sovereign immunity, the trial court must accept the allegations pled in the complaint as true and then make a legal determination whether the defendant is entitled to immunity from having to defend itself against the claims. By denying the motion to dismiss, the trial court has thus denied the defendant's defense that it is immune from suit as a matter of law, thereby denying a defendant who may be sovereignly immune the statutory protection to be free from being named a defendant and having to defend itself from litigation.

F. **This Court's interpretation of the rule leads to an absurd result**

Common sense and logic militate against this Court's interpretation of the rule. "[T]he rules of construction applicable to statutes also apply to the construction of rules." Brown, 715 So. 2d at 243. Thus, "the Court should not interpret a [rule] in

22

a manner resulting in unreasonable, harsh, or absurd consequences." Fla. Dep't of Envtl. Prot. v. ContractPoint Fla. Parks, LLC, 986 So. 2d 1260, 1270 (Fla. 2008). If a party raises only one argument in a motion to dismiss a complaint, an argument that requires the trial court to make a **legal determination** based on the allegations in the complaint, as opposed to developed or undeveloped factual matters, and the trial court denies the motion to dismiss, then the trial court has necessarily made a legal determination as to the legal argument raised in the motion. If that legal argument was a party's claim that it is entitled to sovereign immunity from defending itself from the allegations in the complaint, then the trial court, by denying the motion, has determined, as a matter of law, that the party is not entitled to sovereign immunity based on the allegations in the complaint.

In the instant case, whether DCF is entitled to sovereign immunity from suit **involves no disputed factual issues**, and the legal question can readily be resolved by a motion to dismiss as soon as the complaint is filed. Our sister court has raised a significant concern about parties and trial courts intentionally obfuscating the real justifications for orders denying a party's claim for workers' compensation immunity. In Martin Electronics, Inc. v. Glombowski, 705 So. 2d 26 (Fla. 1st DCA 1997) (en banc), the First District Court of Appeal held that it lacked appellate jurisdiction to review a non-final order denying a motion to dismiss. Id. at 27. The trial court below determined that there were insufficient **facts** to decide the issue of

workers' compensation immunity, but specifically noted that "[t]his determination does not mean that this Court may not ultimately be presented with sufficient facts to determine this issue as a matter of law." Id. at 28. On appeal, the majority held, in applying the Florida Supreme Court's decision in Hastings, that a non-final order denying a motion to dismiss based on workers' compensation immunity must expressly determine, as a matter of law, that workers' compensation immunity is unavailable. Id. at 29-30. However, Judge Wolf, specially concurring, raised a significant concern regarding appeals from orders denying motions to dismiss, as opposed to orders denying motions for summary judgment, which deny a party's claim for immunity, and stated as follows:

> In these cases, there can be no disputed facts. The decision concerning the motion must assume that all the facts in the complaint are taken as true and all inferences are drawn in favor of the plaintiff. Thus, the denial of the motion cannot be based on disputed facts, but must constitute a legal ruling on a given set of facts.

Id. at 31-32 (citation omitted).

Judge Wolf's reasoning is even more persuasive in the instant case. The only issue before the trial court was whether, based on the allegations in the complaint, DCF is immune from suit as a matter of law. Unlike a motion for summary judgment, this legal determination cannot be based upon disputed facts at the pleading stage on a motion to dismiss. Further, as Judge Wolf aptly notes:

24

> As a practical matter, orders denying motions to dismiss or motions for summary judgments will often be drafted by a plaintiff's attorney or by a trial judge who may be gun-shy of an appeal. We can expect that such orders will simply deny the motion without explanation or be drafted to be ambiguous. **Thus, many parties entitled to immunity may be forced to go to trial.**

Id. at 31 (Wolf, J., specially concurring) (emphasis added). This last sentence rings especially true in the instant case. Because DCF is being denied appellate review of the order at issue in this appeal, it is going to be forced to litigate the plaintiff's claims, although, as will be shown *infra*, it is in fact sovereignly immune from suit.

**G. Conclusion as to the issue of jurisdiction**

In conclusion, rule 9.130(a)(3)(C)(xi) should not be read to limit appeals to non-final orders that **expressly** state that the trial court has determined, as a matter of law, that a party is not entitled to sovereign immunity because: (1) the plain meaning of the text of rule 9.130(a)(3)(C)(xi) does not specify that such orders contain any express language; (2) the purpose of the amendment of rule 9.130 to include subsection 9.130(a)(3)(C)(xi) was to avoid vitiating the protections of sovereign immunity from suit by allowing appeals from non-final orders denying a party's claim that it is entitled to such immunity; (3) the case law does not require such an interpretation of the rule; and (4) to conclude otherwise leads to an absurd construction of rule 9.130(a)(3)(C)(xi), as it arbitrarily forces a party to litigate and

defend against a claim from which it has sovereign immunity from suit.[6] As the Florida Supreme Court has stated, a non-final order will be appealable pursuant to rule 9.130(a)(3)(C)(xi) if it is clear that the order determines "entitlement to sovereign immunity **where the case involves a pure legal question**." Beach Cmty. Bank, 150 So. 3d at 1113 (emphasis added).

Accordingly, I respectfully disagree that we lack jurisdiction to review the unelaborated non-final order denying DCF's motions to dismiss in the instant case where it is clear that the trial court rejected, as a matter of law, DCF's claims that it is entitled to sovereign immunity.

## DCF was entitled to dismissal of Count IV

DCF was entitled to dismissal of Count IV as a matter of law. The trial court's refusal to issue an order expressly stating that it was denying DCF's sovereign immunity claim "as a matter of law," and this Court's position that unelaborated orders preclude review by this Court, entirely vitiates DCF's right to be immune

---

[6] Again, none of this is to say that an order denying a party's claim for sovereign immunity is appealable *per se*. In some circumstances, if it is possible that there are factual issues in dispute concerning the existence of sovereign immunity, then rule 9.130(a)(3)(C)(xi) does not allow an appeal from a non-final order that does not elaborate the basis for the trial court's ruling in denying the motion to dismiss. See Pozos, 42 Fla. L. Weekly D418 at *5. Similarly, if it is clear that the trial court did not address the issue of sovereign immunity, such as where the trial court abates its decision as to sovereign immunity, then rule 9.130(a)(3)(C)(xi) does not permit appellate review. Sosa, 215 So. 3d at 91. However, neither of those circumstances are present here.

from defending itself throughout a long and expensive litigation process and the protection rule 9.130(a)(3)(C)(xi) was intended to provide.

The plaintiff alleges in Count IV that DCF was negligent in its inspection of a day care facility's swimming pool at a licensed day care facility. In Count IV, the plaintiff concedes that the day care facility was not owned or operated by DCF and that the child who drowned was not in DCF's care or custody. Well-settled Florida law clearly establishes that, as an inspecting agency who is not an owner or operator of the day care facility, DCF is sovereignly immune as a matter of law on the very face of Count IV of the amended complaint.

In Trianon Park Condominium Ass'n v. City of Hialeah, 468 So. 2d 912, 923 (Fla. 1985), the Florida Supreme Court cautioned that "[g]overnments must be able to enforce laws without creating new duties of care and corresponding tort liabilities that would, in effect, make the governments and their taxpayers virtual insurers of the activities regulated." The Court held that to hold otherwise would result in a substantial fiscal impact on the governmental entity and thus lead to a decrease of governmental regulation that is intended to protect the public and enhance the public welfare. Id.

The day care licensee, not DCF, had the duty to maintain the day care's swimming pool and fence in proper order. As the inspecting entity, DCF owed the

27

plaintiff no common law or statutory duty of care, and thus, DCF cannot be held liable in this action as a matter of law.

## A. No Common Law Duty of Care

In Trianon, the Florida Supreme Court held that a city could not be liable to condominium owners in tort for the allegedly negligent actions of the city's building inspectors for the plaintiff's damages. Trianon, 468 So. 2d at 916. Importantly, the Court noted that there has **never** been a common law duty for a governmental entity or a private individual to enforce the law for the benefit of an individual or a specific group of individuals. Id. at 919. The Court found that there existed no common duty of care for the enforcement of a building code, id. at 919, or that the legislature, which created a general statutory duty to enforce the building code, "evince[d] an intent to give individual citizens a statutory right of recovery for the government's negligent inspection of their property." Id. at 921-22.

Similarly, in Brown v. Department of Health & Rehabilitative Services, 690 So. 2d 641 (Fla. 1st DCA 1997), the First District Court of Appeal affirmed the trial court's order dismissing the claims against HRS (the agency previously named HRS is now named DCF). In Brown, the plaintiff alleged that HRS had negligently issued a license to a day care facility while aware that the spouse of the operator was a child abuser. Based on Trianon, the trial court and the First District concluded that HRS was immune despite a statutory duty imposed by the Legislature upon HRS to ensure

28

"the care and protection of children in child care facilities." Brown, 690 So. 2d at 644 (quoting § 402.301(1), Fla. Stat. (1995)) (Van Nortwick, J., dissenting); see also Dep't of Children & Family Servs. v. Chapman, 9 So. 3d 676, 684 (Fla. 2d DCA 2009) (holding that DCF owed no common law or statutory duty to private individuals in the licensing and monitoring of substance abuse counselors).

## B. No Statutory Duty of Care

"When the legislature creates a regulatory statute that does not expressly create a private right of action against the private individuals who are regulated by the statute, the courts have been cautious about concluding that the statute creates a private right of action against them." Chapman, 9 So. 3d at 684 (citing Murphy v. N. Sinha Corp., 644 So. 2d 983 (Fla. 1994)); Miulli v. Fla. High Sch. Athletic Ass'n, 998 So. 2d 1155 (Fla. 2d DCA 2008). There is nothing in the language of Florida Administrative Code Rule 65C-20.010, its accompanying enforcement regulation, or its enabling statutes that provide for an individual private cause of action. Although the plaintiff contends that Chapters 401 and 402, Florida Statutes, create a statutory duty of care, these Chapters merely authorize DCF to take appropriate disciplinary action if a violation occurs. They do not express or imply a private right of action against DCF for damages. In fact, the First District Court of Appeal rejected that argument in Brown, 690 So. 2d at 644.

Thus, while DCF had a duty to inspect the licensed day care facility and had the authority to discipline the facility for a violation of a regulation, it owed no common law nor statutory duty of care to the plaintiff. Further, under <u>Trianon</u>, compliance of permitting conditions "is an activity found to be within the enforcement realm of government and not subject to liability." <u>Brown</u>, 690 So. 2d at 643. Therefore, assuming all allegations in Count IV to be true, the plaintiff's claim against DCF should have been dismissed on the single legal ground asserted—sovereign immunity.

## Conclusion

Based on this Court's precedent, I am compelled to join the majority in dismissing the instant appeal on the basis that, because the trial court's order in denying DCF's motion to dismiss Count IV, brought and argued solely on DCF's alleged entitlement to sovereign immunity as a matter of law, did not expressly state that the motion was being denied as a matter of law, we lack jurisdiction. I, however, disagree with this Court's interpretation of rule 9.130(a)(3)(C)(xi), application/inapplication of the law, and conclusion regarding jurisdiction in these appeals.

There is a need to correct the problem defendants, who may be entitled to immunity from suit, are facing due to the failure of some trial judges to issue non-appealable orders either by negligence or design. I urge the Florida Supreme Court

and/or the Rules Committee to address and correct this problem.  See also Citizens Prop. Ins. Corp. v. Calonge, 246 So. 3d 447 (Fla. 3d DCA 2018) (Rothenberg, C.J., dissenting); Miami-Dade Cty. v. Pozos, 242 So. 3d 1152 (Fla. 3d DCA 2017) (Rothenberg, C.J., dissenting).

LUCK, J., concurring in the result.

In Citizens Property Insurance Corp. v. Calonge, 246 So. 3d 447 (Fla. 3d DCA 2018), we held that "in making our jurisdictional determination" under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(xi), "we look only to the face of the trial court's order and do not penetrate the record with a searchlight to divine whether the trial court's undisclosed rationale warrants appellate review." Id. at 449. Calonge concluded we did "not have jurisdiction to review the trial courts' unelaborated non-final orders denying [the defendant's] dismissal motions." Id. The concurring opinion in this case says that our holding in Calonge is wrong because it is inconsistent with the text of the rule; in conflict with the purpose of the rule; contrary to the Florida Supreme Court's decision in Beach Community Bank v. City of Freeport; wrongly relies on the Florida Supreme Court cases interpreting rule 9.130(a)(3)(C)(v) dealing with workers' compensation immunity; and leads to an absurd result. I will address each of these points and explain why the court got it right in Calonge.

*The Text of Rule 9.130(a)(3)(C)(xi)*

The concurring opinion defines and relies on the word "determine" in rule 9.130(a)(3)(C)(xi) but does not discuss any of the other words in the rule. I will. While "determine," as the concurring opinion explains, means "deciding something officially," rule 9.130(a)(3)(C)(xi) also tells us where the official decision must be

32

made and <u>what</u> the official decision must decide in order to invoke the court's interlocutory jurisdiction.

<u>Where</u>. Rule 9.130(a)(3)(C)(xi) says that the determination must be made in the non-final order. The rule limits "[a]ppeals . . . of non-final orders . . . to those that determine . . . as a matter of law, a party is not entitled to sovereign immunity." Fla. R. App. P. 9.130(a)(3)(C)(xi). The word "those" in the rule refers to the "non-final orders." An interlocutory appeal is allowed only for those non-final orders that determine, as a matter of law, a party is not entitled to sovereign immunity. The rule says nothing about the record or transcript as being part of the trial court's determination. The rule tells us we must look for the determination in the non-final order, and nowhere else.

<u>What</u>. Rule 9.130(a)(3)(C)(xi) also tells us what must be in the non-final order for there to be a limited appeal. The appeal is limited to those non-final orders that "determine . . . as a matter of law, the party is not entitled to sovereign immunity." The rule refers to the non-final order having this determination, and does not mention the motion to dismiss, the response, and the hearing transcript, as the concurring opinion does. An unelaborated order, as we have here and in <u>Calonge</u>, does not make the necessary determination required by the rule.

*<u>Keck v. Eminisor</u> and the Purpose of Rule 9.130(a)(3)(C)(xi)*

33

The concurring opinion says that the court's reading of rule 9.130(a)(3)(C)(xi) is in conflict with Keck v. Eminisor, 104 So. 3d 359 (Fla. 2012), and the purpose of rule 9.130(a)(3)(C)(xi). Keck could not tell us anything about rule 9.130(a)(3)(C)(xi)'s language because it was decided two years before the rule was adopted by the Florida Supreme Court. In re Amends. to Fla. R. App. P. 9.130, 151 So. 3d 1217, 1218 (Fla. 2014) ("[W]e amend Florida Rule of Appellate Procedure 9.130 as reflected in the appendix to this opinion. New language is indicated by underscoring; deletions are indicated by struck-through type. The amendments shall become effective January 1, 2015, at 12:01 a.m.").

In Keck, as the concurring opinion notes, the Florida Supreme Court asked the bar's appellate court rules committee to look at whether the list of appealable non-final orders should be expanded to include those that denied immunity as a matter of law. 104 So. 3d at 366. The Court did not suggest or mandate that the committee adopt any specific language.

To the extent Keck says anything about the "purpose" of rule 9.130(a)(3)(C)(xi), statutory purpose or intent cannot be used to override the text of the statute. See W. Fla. Reg'l Med. Ctr., Inc. v. See, 79 So. 3d 1, 9 (Fla. 2012) ("To discern legislative intent, this Court looks first to the plain and obvious meaning of the statute's text, which a court may discern from a dictionary. If that language is clear and unambiguous and conveys a clear and definite meaning, this Court will

apply that unequivocal meaning and not resort to the rules of statutory interpretation and construction. If, however, an ambiguity exists, this Court should look to the rules of statutory construction to help interpret legislative intent, which may include the examination of a statute's legislative history and the purpose behind its enactment." (citations omitted)). The same rules of construction apply to court rules. See Barco v. School Bd. of Pinellas Cnty., 975 So. 2d 1116, 1121 (Fla. 2008) ("Florida Rules of Civil Procedure are construed in accordance with the principles of statutory construction.")

Chief Judge Rothenberg acknowledged the constraints of this rule of statutory construction in GEICO Gen. Ins. Co. v. Mukamal, 230 So. 3d 62, 66 (Fla. 3d DCA 2017) (Rothenberg, C.J., specifically concurring), when she wrote:

> While section 627.426 is clear and unambiguous, and therefore mandates the result identified by the trial court and the affirmance being issued by this Court, such a result appears, to me, to be contrary to the intent of the statute….
>
> I, therefore, concur with the majority opinion, and write solely to identify what appears to be an unintended consequence of the subject legislation and to invite review by the Florida Legislature.

Even when the results of applying statutory language seems to us to be harsh or unintended by the body that enacted it, courts are not free to refuse to apply the statute or rule or to use the statute or rule's purpose to trump our mandate to follow the clear and unambiguous statutory language. At most, we can recommend a revision, as Chief Judge Rothenberg did in GEICO.

35

*Beach Community Bank v. City of Freeport*

The concurring opinion next says that the court's reading of rule 9.130(a)(3)(C)(xi) is in conflict with the Florida Supreme Court's decision in Beach Community Bank v. City of Freeport, Florida, 150 So. 3d 1111 (Fla. 2014). The concurring opinion finds a conflict because "[a] review of the record before the First District and the Florida Supreme Court reflects that the order in question merely stated that the City's 'Motion to Dismiss with Prejudice is denied and Defendant shall file a responsive pleading within 20 days of the date of this Order.'" Concurring Op. at 15. For there to be a conflict, however, the conflict must appear on the face of the Florida Supreme Court's opinion. See Hardee v. State, 534 So. 2d 706, 708 n.* (Fla. 1988) ("[F]or purposes of determining conflict jurisdiction, this Court is limited to the facts which appear on the face of the opinion."). As the concurring opinion explains, it had to dig through the underlying record before the district court and Supreme Court to see that the trial court's order was unelaborated. That fact goes unmentioned in the Florida Supreme Court's Beach Community opinion, and no one who reads the opinion would ever know that the trial court's order was unelaborated. In contrast, the fact that the trial court's orders were unelaborated is discussed at length in Calonge.

There is also no conflict because Beach Community did not decide the jurisdictional issue. The Court never discussed whether an unelaborated denial of a

36

motion to dismiss could trigger non-final appeal jurisdiction under rule 9.130(a)(3)(C)(xi). "[A] ruling on the merits of a case in which the court's jurisdiction wasn't challenged or assumed doesn't constitute precedent on the question whether the court has jurisdiction over such a case." Bryan A. Garner et al., The Law of Judicial Precedent 121 (Thomas Reuters, 2016); see also Ariz. Christian Sch. Tuition Org. v. Winn, 563 U.S. 125, 144 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed.") Lewis v. Casey, 518 U.S. 343, 352 n.2 (1996) ("[W]e have repeatedly held that the existence of unaddressed jurisdictional defects has no precedential effect."); Hagans v. Lavine, 415 U.S. 528, 533, n.5 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions sub silentio, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us."); United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38 (1952) ("Even as to our own judicial power of jurisdiction, this Court has followed the lead of Chief Justice Marshall who held that this Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio").

Certainly we should not ignore the record in deciding an appeal. But once an appeal has been decided, and the court (for whatever reason – maybe the court missed it; maybe the parties never raised it) does not mention its jurisdiction, we

37

cannot use that silence as precedent for the unmentioned jurisdictional issue in another appeal. The concurring opinion does not cite a single case that says we can use a court's silence about jurisdiction as precedent for jurisdiction because no such case exists.

*The Workers' Compensation Immunity Cases*

Rule 9.130(a)(3) allows for a non-final appeal of an order determining "that, as a matter of law, a party is not entitled to workers' compensation immunity." Fla. R. App. P. 9.130(a)(3)(C)(v). The Florida Supreme Court has read rule 9.130(a)(3)(C)(v) to mean that "a district court does not have jurisdiction to review a nonfinal order denying summary final judgment unless the trial court's order explicitly states that the defendant will not be entitled to present a workers' compensation immunity defense at trial." Reeves v. Fleetwood Homes of Fla., Inc., 889 So. 2d 812, 821 (Fla. 2004); see also Hastings v. Demming, 694 So. 2d 718, 720 (Fla. 1997). The language of the sovereign immunity non-final appeal rule (rule 9.130(a)(3)(C)(xi)) parallels the workers' compensation non-final appeal rule (rule 9.130(a)(3)(C)(v)):

| **Rule 9.130(a)(3)(C)(v)**: "Appeals to the district courts of appeal of non-final orders are limited to those that . . . determine . . . that, as a matter of law, a party is not entitled to workers' compensation immunity." | **Rule 9.130(a)(3)(C)(xi)**: "Appeals to the district courts of appeal of non-final orders are limited to those that . . . determine . . . that, as a matter of law, a party is not entitled to sovereign immunity." |
| --- | --- |

It has been argued that <u>Reeves</u> and <u>Hastings</u> are highly distinguishable because unlike sovereign immunity from suit, workers' compensation immunity is an affirmative defense, involving factual issues that typically preclude a motion to dismiss. I cannot agree because sovereign immunity is also an affirmative defense, and as with workers' compensation immunity, dismissal will only be granted if it is conclusively established on the face of the complaint. Compare <u>Peak v. Outward Bound, Inc.</u>, 57 So. 3d 997, 999 (Fla. 2d DCA 2011) ("Sovereign immunity generally is an affirmative defense that may justify granting a motion to dismiss only when the complaint itself conclusively establishes its applicability." (quotation omitted)); <u>Sierra v. Associated Marine Institutes, Inc.</u>, 850 So. 2d 582, 590 (Fla. 2d DCA 2003) ("First, as in the case of workers' compensation immunity, sovereign immunity generally is an affirmative defense that may justify granting a motion to dismiss only when the complaint itself conclusively establishes its applicability."); <u>Rankin v. Colman</u>, 476 So. 2d 234, 238 (Fla. 5th DCA 1985) ("Although the defense of sovereign immunity is an affirmative defense, where an affirmative defense appears on the face of a pleading, it may be argued as a basis for a motion to dismiss."), with <u>Ruiz v. Aerorep Grp. Corp.</u>, 941 So. 2d 505, 508 (Fla. 3d DCA 2006) ("Although workers' compensation immunity usually cannot be raised in a motion to dismiss, an exception exists allowing the defense to be raised in a motion to dismiss where the defense appears on the face of the complaint."). Indeed, in

39

Sierra, the district court found workers' compensation immunity and sovereign immunity similar for motion to dismiss purposes. There is no legal basis for treating the two immunities differently.

Here, the concurring opinion says that Hastings and Reeves are distinguishable because they dealt with "nonfinal orders denying summary judgment," while in this case we are reviewing an order denying a motion to dismiss. The concurring opinion explains "that while an order denying a motion for summary judgment, where factual issues are at play, needs to make an explicit legal determination, an order denying a motion to dismiss a complaint against a defendant claiming sovereign immunity, which is based solely on the four corners of the complaint, need not incant these magic words to be reviewable on appeal." Concurring Op. at 22.

The Florida Supreme Court, unlike the concurring opinion, has not distinguished between motions for summary judgment and motions to dismiss in applying its rule that interlocutory appeal jurisdiction is determined from the face of the nonfinal order. In Reeves, the Court noted that the "lower courts of Florida have strictly adhered to [its] decision[] in Hastings . . ., determining that a district court does not have jurisdiction to review a nonfinal order denying summary final judgment unless the trial court's order explicitly states that the defendant will not be

entitled to present a workers' compensation immunity defense at trial," id. at 821, and approvingly cited these examples:

> See, e.g., S. Pan Servs. Co. v. Rodriguez, 771 So. 2d 612, 612 (Fla. 3d DCA 2000) (dismissing appeal from nonfinal order because bare bones order of denial of motion for summary judgment on the ground of workers' compensation immunity is not subject to review under rule 9.130(a)(3)(C)(vi)); Better Roads, Inc. v. Gonzalez, 744 So. 2d 1123, 1123 (Fla. 2d DCA 1999) (holding no jurisdiction where order simply denied summary judgment without stating reason); **Martin Elecs., Inc. v. Glombowski, 705 So. 2d 26, 30 (Fla. 1st DCA 1997) (holding no jurisdiction where order denying motion to dismiss did not contain the specific language required by Hastings**); Rinker Materials Corp. v. Holmes, 697 So. 2d 558, 559 (Fla. 4th DCA 1997) (holding no jurisdiction where trial court, on remand, explained that the motion for summary judgment had been denied because there were genuine issues of material fact).

Reeves, 889 So. 2d at 821 (emphasis added).

The citation to Glombowski is telling. There, the trial court denied motions to dismiss based on workers' compensation immunity. Glombowski, 705 So. 2d at 28. The district court read Hastings "as clearly precluding a district court from reviewing the record in making a jurisdictional determination under" the workers' compensation immunity jurisdiction rule. Id. at 30. Because the trial court's order "d[id] not contain the specific language which [was] required by Hastings," it was not appealable under rule 9.130. Id. By relying on and describing Glombowski, the Florida Supreme Court saw no jurisdictional difference between unelaborated orders that denied motions for summary judgment and those that denied motions to dismiss.

At bottom, we cannot read the language in the workers' compensation immunity non-final appeal rule differently than the same language in the sovereign immunity rule, as this court concluded in Miami-Dade County v. Pozos, 242 So.3d 1152 (Fla. 3d DCA 2017) and Calonge. Where the same words and phrases are used in a rule or statute, we must read them together and give them the same meaning. See Rollins v. Pizzarelli, 761 So. 2d 294, 298 (Fla. 2000) ("[T]he same meaning should be given to the same term within subsections of the same statute."); Goldstein v. Acme Concrete Corp., 103 So. 2d 202, 204 (Fla. 1958) ("[I]n both the mechanics' lien statutes (F.S. ch. 84, F.S.A.) and the Workmen's Compensation Act (Ch. 440) the lawmakers use similar phrasing in dealing with construction projects. We may assume that in both chapters they intended certain exact words or exact phrases to mean the same thing. In a broad sense the chapters are in pari material and should, to the extent that an understanding of one may aid in the interpretation of the other, be read and considered together."); State v. Johnson, 147 So. 254, 256 (Fla. 1933) ("Chapter 14486, Acts 1929 (Ex. Sess.), and chapter 14776, Acts 1931, both apply to the Ocean Shore improvement district of Flagler and Volusia counties, have the same object in view, and contain almost the same language and terms. Such acts are accordingly in pari materia and must be interpreted and given effect together, and likewise construed."); HIP Health Plan of Fla., Inc. v. Griffin, 757 So. 2d 1272, 1273

(Fla. 4th DCA 2000) ("As the same language appears in both rules, it should be interpreted consistently.").

The Florida Supreme Court had a choice of the language to use when it adopted rule 9.130(a)(3)(C)(xi). For some categories of non-final appealable orders, the Court expressly made the orders appealable if they granted or denied relief. See Fla. R. App. P. 9.130(a)(3)(B) ("Appeals to the district courts of appeal of non-final orders are limited to those that . . . grant, continue, modify, deny, or dissolve injunctions, or refuse to modify or dissolve injunctions . . . ."); id. R. 9.130(a)(3)(D) ("Appeals to the district courts of appeal of non-final orders are limited to those that . . . grant or deny the appointment of a receive, and terminate or refuse to terminate a receivership."). The Court could have done that here. It could have made appealable non-final orders denying motions to dismiss based on sovereign immunity. That would have been consistent with other appealable non-final orders and taken sovereign immunity outside of the on-the-face-of-the-record cases (i.e., Reeves and Hastings).

Instead, the Florida Supreme Court adopted the bar's proposal to track the language of the workers' compensation immunity non-final appeal rule (rule 9.130(a)(3)(C)(v)). The Court used the exact same language save for substituting "sovereign immunity" for "workers' compensation immunity." There is no other difference.

43

This was a considered choice. After <u>Keck</u>, the Florida Supreme Court waited two years for the appellate court rules committee to study the referral and for the proposal to work its way through the bar's rulemaking process. Even then, the Florida Supreme Court did not blindly adopt the bar's proposal. The Court tweaked rule 9.130(a)(3)(C)(xi) to make clear that it applied only to sovereign immunity and was not a catch-all for all immunities. <u>See</u> <u>In re Amends. to Fla. R. App. P. 9.130</u>, 151 So. 3d at 1217-18 ("Additionally, the Committee proposes adding new subdivision (a)(3)(C)(xi) to authorize appeals from nonfinal orders which determine that, as a matter of law, a party is not entitled to <u>any immunity</u> from suit not otherwise addressed in this rule. However, because we have concerns that claims pertaining to immunity as a whole may be too broad, we modify the Committee's proposal to authorize appeals from nonfinal orders which determine, as a matter of law, that a party is not entitled to <u>sovereign immunity</u>." (emphasis added)).

The Florida Supreme Court considered the language it wanted for rule 9.130(a)(3)(C)(xi); it chose to use the same language as the workers' compensation immunity non-final appeal rule (rule 9.130(a)(3)(C)(v)); and the Court knew its case law interpreting rule 9.130(a)(3)(C)(v). This court was correct in <u>Pozos</u> and <u>Calonge</u> to give the same words in rule 9.130 their same meaning absent an indication to the contrary from the Florida Supreme Court.

*The Absurd Result Doctrine*

The concurring opinion finally says that the court's reading of rule 9.130(a)(3)(C)(xi) would lead to an absurd result because the trial court's denial of the motion to dismiss based on sovereign immunity "necessarily made a legal determination as to the legal argument raised in the motion." Concurring Op. at 24. The absurd result doctrine does not apply here for three reasons.

First, the absurd result doctrine applies where a statute is ambiguous. The courts will use the absurdity doctrine to choose one reading over another that results in absurd consequences. But where, as here, the statute is unambiguous – where the language of the rule or statute is clear – the Florida Supreme Court has cautioned against using the absurd result doctrine. See Wright v. City of Miami Gardens, 200 So. 3d 765, 772 (Fla. 2016) ("Some of the district court judges and Wright have contended that this demonstrates an absurd result that could not have been intended by the Legislature. We acknowledge that the 'absurd result' doctrine is alluring on these facts, but there is no ambiguity upon which to apply that rule of construction. . . . Unlike in other cases where the absurd result doctrine has been applied to an ambiguous statute, here the Legislature specifically removed the language from the prior statute that would have avoided the result of disqualification.").

Second, just because a trial court denies a single-issue motion to dismiss does not mean that the trial court necessarily determined the legal argument raised in that motion. This case is a good example. The trial court seemed to think it had the

45

discretion to deny the motion to dismiss in order to allow the parties discovery and to give the trial court another pass at dismissing the case down the line. Here is what the trial court said at the hearing after the parties were finished with their arguments:

> Okay. I am going to deny the motion to dismiss, however, I'm letting both sides, particularly the plaintiff, know that it does not mean that I am – that you're going to get past summary judgment. That's a different standard. So you can conduct whatever discovery you need to conduct and then I will look at it. . . . I'm just letting [the plaintiff] proceed and it's denied, period.

The trial court's unelaborated order in this case is just as likely a reflection of its mistaken belief that it had the discretion to deny an otherwise appropriate motion to dismiss so discovery could proceed. We don't know because the order doesn't say why the motion to dismiss was denied. And because we don't know, we can't say the trial court necessarily determined the sovereign immunity issue.

Third, in <u>Reeves</u> and <u>Hastings</u>, the Florida Supreme Court read the same language in the workers' compensation immunity non-final appeal rule as requiring the trial court to determine on the face of the order that a party, as a matter of law, was not entitled to sovereign immunity in order to invoke non-final appeal jurisdiction. The Florida Supreme Court said that it didn't matter that workers' compensation immunity was the only issue raised in the motion to dismiss or summary judgment; if the trial court's order was unelaborated, we did not have jurisdiction to review the denial. If that result is not absurd, I don't see how the same result in a rule 9.130(a)(3)(C)(xi) case is absurd. Either they both have an absurd

result, or neither do, and the Florida Supreme Court has already made that call. These are not the rare and exceptional circumstances that justify use of the absurdity doctrine.

*Conclusion*

The concurring opinion makes some great points about why rule 9.130(a)(3)(C)(xi) should be changed to review denials of sovereign immunity as early in the appellate process as possible. The Florida Supreme Court currently has certified questions before it about the proper scope of rule 9.130(a)(3)(C)(xi), Fla. Agency for Health Care Admin. v. McClain, No. 1D16-474, 2018 WL 1833386, at *3 (Fla. 1st DCA Apr. 18, 2018) ("We certify the same question of great public importance to the Florida Supreme Court as we did in Jackson: Does Rule 9.130 permit an appeal of a non-final order denying immunity if the record shows that the defendant is entitled to immunity as a matter of law but the trial court did not explicitly preclude it as a defense?"), and the appellate court rules committee is considering a referral to address any potential changes to the rule.

But it is our job to say what the law is, not what we want it to be or what it should be. In Calonge, and now here, the court correctly applied the current state of the law for rule 9.130(a)(3)(C)(xi).